UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


THOMAS J. NESTOR,
Plaintiff,

CIVIL ACTION NO. 8:20-cv-00265


vs.


VPC3 II, LLP,
a Florida Limited Liability
and N.E. APARTMENTS
ASSOCIATES, INC.,
a Florida Corporation,
JUDGE JACK DAY
In his official capacity for declaratory judgment only,
Defendants.

_____/



Second District Case No.: 2D14-4514
LT Case No.: 14-002358-CI
Sixth Circuit
**REQUEST FOR A JURY TRIAL**

## AMENDED COMPLAINT

## NATURE OF CASE

This is an action seeking federal relief for civil rights violations where the Plaintiff was deprived of his Fourteenth Amendment due process rights.

## JURISDICTION AND VENUE

This Court has jurisdiction over this action pursuant to 42 U.S.C. § 12188(a) and 28 U.S.C. § 1331 This Court may grant equitable relief, monetary damages, and a civil penalty pursuant to 42 U.S.C. 12188(a)(1) and 28 U.S.C. § 2201 and 2202.

This action arises under the United States Constitution, particularly the Fourteenth Amendment, and under federal law, specifically, Title 42 U.S.C. § 1983 This court has jurisdiction:

1. Over Plaintiff's civil claims arising under the United States Constitution and federal law pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983

2. Over Plaintiff's prayer for preliminary and permanent injunctive relief and damages under F.R.C.P. 65(a);

3. Over Plaintiff's prayer for declaratory relief under Title 28 U.S.C. § 2201; and

4. To award attorney's fees, pursuant to Title 42 U.S.C. § 1988.

## IDENTIFICATION OF THE PARTIES

5. Plaintiff Thomas J. Nestor (Mr. Nestor or "Plaintiff") is a resident of Pinellas County, Florida, and a citizen of the United States.

6. Plaintiff currently resides at 500 45th Avenue NE, St. Petersburg FL, 33703.

7. Defendant VPC3 II, LLP (Seller) is a Florida Limited Liability Partnership located at 6830 Central Avenue, Suite C St. Petersburg, FL 33707.

8. Defendant N.E. Apartments Associates, Inc. (Intervenor) is a Florida Corporation located at 1344 NW 22 Street, Miami, FL .

9. Defendant Judge Jack Day is a Circuit Judge for the Sixth Judicial Circuit of the State of Florida. He is sued in his official capacity and for declaratory and injunctive relief only. At all times relevant to this Complaint, the conduct of Defendant Judge Jack Day was under color and authority of state law.

## STATEMENT OF FACTS

1. Mr. Thomas J. Nestor (hereinafter known as "Plaintiff" or "Buyer") entered into negotiations in May of 2012 with Mr. Phillip J. Powell, managing partner and authorized signatory of Defendant VPC3 II, LLP (hereinafter known as "Seller" or "Defendant"), for the purchase the landmark Historic YMCA property, located at 116 5th Street South, St. Petersburg 33701.

2. The Plaintiff submitted a Purchase Offer to the Seller shortly thereafter but the Purchase Offer was not accepted.

3. The Seller then prepared and provided to the Plaintiff a LETTER OF INTENT TO PURCHASE REAL ESTATE ("LOI") for the landmark YMCA building.

4. The Seller and the Plaintiff signed the LOI on June 12, 2012.

5. The Plaintiff Thomas Nestor's name and the words "New LLC (to be formed)" were listed in the document. Hereinafter, Thomas Nestor and the LLC will be referred to as "the Buyer."

6. The LOI had no prohibitions on assignment.

7. The Seller then prepared and submitted to the Plaintiff the PURCHASE AND SALE AGREEMENT ("Purchase Contract") for the landmark YMCA building on September 21st, 2012.

8. Both the Seller and the Plaintiff signed the Purchase Contract on October 2nd, 2012.

9. The Purchase Contract had no prohibitions on assignment.

10. The Plaintiff and his development team desired, planned and intended to create a special events and entertainment venue with additional facilities that would include performing arts, music education, music therapy plus other community uses for people of all ages and income levels, after fully restoring the landmark YMCA building.

11. The Purchase Contract, however, did not include any language limiting, restricting, demanding or obligating in any way, what the Plaintiff and/or his affiliates or assigns had to restore, repurpose and/or operate the landmark building post-closing.

12. The Purchase Contract was a contract for the sale of real estate.

13. Prior to and at the signing of the Purchase Contract, the Seller advised the Plaintiff that the Purchase Contract was fully assignable at any time.

14.     The Seller knew the Plaintiff was initially identified as the Buyer in the Purchase Contract to allow the Plaintiff to spearhead a development project to save the landmark YMCA building from threat of demolition.

15.     The Seller knew from the start of the project and the signing of the Purchase Contract, that the Plaintiff did not have the financial means to purchase the building, nor pay any of the deposit payments that were listed in the Purchase Contract.

16.     The Seller also knew that the landmark building was not going to be registered in the Plaintiff's name at the closing.

17.      The Seller also knew that the new owner (or purchaser) of the landmark building was yet to be determined.

18.     The Seller also knew that the Purchase Contract would be assigned by the time of the closing to an entity or individual chosen by the Plaintiff that could either pay the full $1,400,000 purchase price, or the balance of the Purchase Contract due at the closing. *See* Purchase Contract, MISCELLANEOUS Section 18 (f): Successors and Assigns; Assignment: "Buyer may assign this Agreement and Buyer's rights hereunder to a related entity upon written notice to Seller."

19.      The Seller's first claim that the Plaintiff breached the Purchase Contract and the Settlement Agreement by "assigning the Nestor Purchase Contract to an unrelated entity" was fraudulent and in bad faith.

20.     Only the Lease Agreement for the landmark building included restrictions and limitations regarding assignability.

21.      Both parties signed this Lease Agreement on December 31, 2012.

22.      .  The Lease Agreement states:

Lessee shall not assign this lease or sublet the premises or permit the use of the premises by others without the prior written consent of the Lessor which shall not be unreasonably withheld; however, Lessor may exercise assignment of this lease without permission of the Lessee.

23.      The Seller was provided written notice several days before the Closing Deadline of

July 15, 2014 that the Plaintiff was going to assign the Purchase Contract.

24.      The Seller accepted sixteen (16) non-refundable deposits totaling $166,000 before

returning a check for $18,000 that was timely submitted by the Plaintiff to the Seller for

the March 2014 closing extension deposit payment.

25.      The Seller attempted to terminate the Purchase Contract on March 18, 2014.

26.      The Original Complaint alleging breach from the Seller was then filed by the

Plaintiff against the Seller (VPC3 II, LLP) on March 23, 2014.

27.      The Original Complaint requested declaratory and supplemental relief and for

specific performance of the Purchase Contract.

28.      After the Original Complaint was filed, and the Seller refused to accept any more

deposits from the Plaintiff for the Purchase Contract, there were an additional four (4)

deposits of $18,000 each placed in the trust account by Counsel for the Plaintiff.

29.      These additional four (4) deposits totaling $72,000 covered March, April, May and

June 2014 payments for the Purchase Contract.

30.      These (4) deposits were received by Counsel for the Plaintiff by May 23, 2014.

31.     The day before the scheduled hearing for the Original Complaint, on June 25, 2014, Counsel for the Seller called Counsel for the Plaintiff wanting to settle the case and the Plaintiff accepted.

32.     The Plaintiff entered into a Settlement Agreement with the Seller on June 26, 2014, and with an allowed party to the litigation, N.E. Apartments Associates Inc. ("Intervenor"), settling the Complaint.

33.     The Plaintiff believed that both parties to the Settlement Agreement would act in good faith.

34.     The Court ratified the parties' of the Settlement Agreement which stated:

   a.   The Nestor Contract is reinstated. Nestor shall have until 5 p.m. EDT on July 15, 2014, to close on the purchase of the Subject Property by delivering the closing documents and funds to VPC pursuant to the terms of the Nestor Contract (the "Closing Deadline"). If for any reason Nestor fails to complete the closing of the purchase of the Subject Property, including delivery of all amounts due at closing in immediately available U.S. Funds, on or before 5:00 p.m. EDT on July 15, 2014, then all of Nestor's rights under the Nestor contract shall terminate and the Subject Property shall be sold pursuant to the Back-up Contract.

35.     The Settlement Agreement had a Binding Effect section that stated:

   "This Settlement Agreement shall be binding upon the Parties and their successors and assigns" and "shall inure to the benefit of each Party and its successors and assigns".

36.     The Settlement Agreement had no prohibitions on assignment.

37.     The Settlement Agreement did not mention anything regarding deposits.

38.     The Settlement Agreement did not list the amount due for the closing.

39.     The Plaintiff assigned the Purchase Contract on two (2) separate occasions prior to the third (3rd) assignment that took place on the contract closing day, July 15, 2014.

40.     The first assignment was to Monticello Trust UTA on November 14, 2012.

41.     The second assignment was to Historic Venue LLC. on September 12, 2013.

42.     Both assignments were with the Seller's full knowledge.

43.     The Seller was notified of the first (1st) assignment of the Purchase Contract by the Plaintiff on or around November 14, 2012.

44.     The Seller did not raise any objection to the first (1st) assignment.

45.     The Seller knew the assignee was a wealthy developer in Tampa Bay.

46.     The Seller was notified of the second (2nd) assignment of the Purchase Contract by the Plaintiff on or around September 12, 2013.

47.     The Seller did not raise any objection to the second (2nd) assignment.

48.     The Seller met with a representative of the (2nd) assign, at the Seller's office, with the Plaintiff and other members of the Plaintiff's development team present.

49.     In addition to the two (2) previously listed assignments, the Seller also solicited the Plaintiff to assign the Purchase Contract to "potential buyers" that the Seller was communicating with, who were interested in the purchasing the landmark property, and were unknown and unrelated to the Plaintiff.

50.     The Sellers second (2nd) claim that the Plaintiff breached the Purchase Contract and the Settlement by "failing to pay the correct amount to close in immediately negotiable funds by 5 p.m. on July 15, 2014" was also fraudulent and in bad faith.

51.     The Purchase Contract clearly states important closing obligations from both the Seller and the Buyer. CLOSING DOCUMENTS AND OBLIGATIONS Section 10 (a) (vi) (ix) specifically states that:

Seller's Obligations at the Closing: At the Closing, Seller shall deliver to Buyer the        following documents, as applicable: (vi) Closing Statement: "A closing statement setting  forth the allocation of closing costs, purchase proceeds, etc,"  and (ix) Other Documentation: "Such other documents that may be reasonable and necessary to consummate and close the purchase and sale contemplated herein ."

CLOSING DOCUMENTS AND OBLIGATIONS: Section 10(b)(i), (iii) specifically     states:

Buyer's Obligations at the Closing: At the Closing, Buyer shall deliver to Seller the        following: (i) Purchase Price. The balance of the Purchase Price (subject to the adjustments and pro-rations required by this agreement) by cashier's check or confirmed      wire transfer of immediately available U.S. funds" and (iii) Other Documentation: "Such other documents that may be reasonable and necessary to consummate and close the purchase and sale contemplated herein."

52.      The Plaintiff and his assign Boy Scout Holdings Inc. ("BSH") wired the full

balance of the purchase price due at the closing, listed on Line 303 (Cash From Buyer),

on the Last Draft HUD-1 Closing Statement provided to the Plaintiff on the morning of

the closing on July 15, 2014 from the Title Agent chosen by Seller.

53.      The Plaintiff also delivered the necessary closing documents to Monica Bergeron

of Title Agency of Florida Inc., (hereinafter referred to as "Title Agent") on Closing Day

July 15, 2014, to finalize the purchase. The Closing was for Nestor and his affiliates.

Plaintiff was always present at Closing.

54.      The wire transfer of funds for the closing and the closing documents were delivered

to and received by the Title Agent before the 5pm closing deadline.

55.      Both Defendants, along with the Title Agent, plus Counsel for both the Seller and

the Intervenor, were all alerted in writing on July 14, 2014 (the day before the Closing)

by the Plaintiff's Counsel that Mr. Nestor would be assigning his role as Buyer to another party (to be determined) at the Closing.

56.     All parties fully understood an assignment of the Purchase Contract was taking place and no objections were raised related to the assignability of the Purchase Contract on either July 14, 2014 or on July 15, 2015, the final Closing Day.

57.     It was not until July 23, 2014, eight (8) days after the Closing Deadline that both the Seller and the Intervenor claimed in both their motions for an Emergency Hearing that there was now an issue regarding the assignment of the Purchase Contract.

58.     Additionally, the allotted spaces listing the Buyer's name who would be closing on the landmark building on July 15, 2014 were deliberately left blank in both of the important closing documents: (A) Royalty Agreement and (B) Transfer of Development Rights Agreement, an illustration that both the Defendants and the Title Agent knew the Purchase Contract for historic YMCA building would be assigned at closing to a party other than the Plaintiff.

59.     The closing documents were made a part of the Settlement Agreement between the Plaintiff and Seller and drafted by counsel for the Seller.

60.     Both closing documents needed to be signed by the assigned Buyer and delivered to the Closing Agent by the 5pm Deadline.

61.     On July 15, 2014, Mr. Nestor and Adam Harden of SoHo Capital LLC. entered into a verbal agreement for $1,500,000.

62.     Mr. Harden and his partner, Charles Bruck of Boy Scout Holdings LLC ("BSH"), accepted the assignment of the Purchase Contract and agreed to (A) pay the amount to

close on the historic YMCA Property, (B) pay the debt related to the project and (C) work with the Plaintiff and his development team on restoring and repurposing the property post-closing.

63.     The Plaintiff assigned the Purchase Contract to Boy Scout Holdings, LLC. that same afternoon, well before the 5pm Closing Deadline.

64.     The ASSIGNMENT OF PURCHASE AND SALE AGREEMENT Addendum drafted by counsel for the Plaintiff along with a request for the final HUD closing statement was sent to the Title Agent, and emailed to all parties involved in the closing, prior to the Closing Deadline.

65.     There were no objections raised by the Seller, or any party to the closing, regarding the assignability of the Purchase Contract, nor was anything stated from the Seller regarding the Plaintiffs ability to assign, or later claimed limitations on assigning, ever raised at the closing, for there were none.

66.     A wire transfer for completing the closing was made to the Title Agent before the 5 p.m. Closing Deadline for $1,202,284.59 by the Plaintiff's assign BSH per the verbal agreement between the two parties, and the written notice of assignment provided to the Seller.

67.     The amount of funds wire transferred was the total closing balance listed on Line 303 (Cash From Buyer) on both the Last Draft HUD-1 closing statement and the Final HUD-1 closing statement provided on Closing Day by the Title Agent.

68.     Before the 5:00 pm Closing Deadline on July 15, 2014, the Plaintiff also delivered

both the Royalty Agreement and Transfer of Development Rights Agreement to the Title

Agent.

69.     Both closing documents were signed by the Plaintiff's assignee Charles J. Bruck,

principle of Boy Scout Holdings LLC.

70.     The Final HUD-1 closing statement was dated and time stamped: July 15, 2014,

5:00 p.m. with BSH listed as the Buyer.

71.      Shortly after the 5:00 p.m. Closing Deadline, the Title Agent called counsel for the

Plaintiff to advise that there was a mistake on the closing statement.

72.     The Title Agent had failed to provide the correct closing amount on Line 303.

73.     The total on Line 303 (Cash From Buyer) was incorrect by $72,000 on both the Last

Draft HUD-1 closing statement and Final HUD-1 closing statement provided by the Title

Agent on the day of the closing.

74.     Per The United States Department of Housing and Urban Development and the

Consumer Financial Protection Bureau Line 303 (Cash From Buyer) is the amount the

Buyer needs to bring to the closing and is the total amount due from the Buyer to close.

75.     Per Florida Contract Law the Plaintiff and his assign BSH were both bound by the

Purchase Contract and the Settlement Agreement terms and had to pay the amount listed

on Line 303 (Cash From Buyer) before the 5 p.m. Closing Deadline, whether the Buyer

was the Plaintiff or his assign, and whether the amount listed on Line 303 was correct or

was incorrect.

76.    Both the Last Draft HUD-1 closing statement and the Final HUD-1 closing statement created on July 15, 2014 identified an incorrect amount on Line 303.

77.    The incorrect amount and error is identical on both closing statements that were prepared by the Title Agent and submitted to the Seller on Closing Day.

78.    The Title Agent made several changes to the HUD-1 closing statement but failed to provide the correct amount due for closing on Closing Day.

79.    Neither the Seller, Intervenor, Title Agent nor counsel for the aforementioned parties never once stated on the day of the closing, before the Closing Deadline, that the amount listed to close on Line 303 on the closing statement was incorrect.

80.    The Plaintiff, however, fully performed his duties and obligations under the Purchase Contract and the Settlement Agreement, by having his assign BSH wire the total listed due on Line 303 (Cash From Buyer) and by delivering the signed closing documents to the Title Agent by the 5:00 p.m. Closing Deadline.

81.    After the error on the closing statement was conveyed to counsel for the Plaintiff, counsel for Seller urged counsel for the Plaintiff to provide a check to cover the additional funds that were not listed in Line 303.

82.    A check for the amount of $72,000 was delivered to counsel for Seller as soon as the error was communicated and a request for payment was made.

83.    The payment was made in good faith.

84.    Shortly after the $72,000 check was delivered to counsel for Seller, the Intervenor demanded that the Seller "terminate the Nestor Contract" and that the Seller "cease any action in furtherance of the [Nestor] Closing."

85.     The Seller obliged the requests of Intervenor.

86.     The Seller refused to deliver the deed, even after the Plaintiff paid the Seller and remedied the Title Agents error, resulting in a material breach of the Seller's closing obligations listed in the Purchase Contract and the Settlement Agreement.

87.     Seller and Intervenor then both filed separate Emergency Motions to Enforce the Settlement Agreement on July 23, 2014.

88.     An Emergency Hearing was held on September 4, 2014 where the Seller and the Intervenor attempted to confuse and defraud the court by misrepresenting critical facts, omissions of material facts, and presenting perjured testimony to deflect from important contractual obligations the Seller had related to the Nestor Purchase Contract and the true occurrences of what took place on Closing Day, July 15, 2014.

89.     After the Defendants completed their full presentation to the court, the Judge ruled.

90.     A non-final order was issued on September 19, 2014, in favor of the Defendants.

91.     The Plaintiff appealed the decision on September 22, 2014, to the Second District Court of Appeals of Florida.

92.     While the Appeal was in its infancy, and before the Appellant's Initial Brief was submitted by the Plaintiff to the Appellate Court, the Seller sold the landmark YMCA building to the (back-up contract) Intervenor on November 12, 2014.

93.     The sale was for the same $1,400,000 purchase price listed on the Nestor Purchase Contract, however, the Intervenor only paid $700,000 to the Seller for the purchase and the Seller-Owner financed the remaining $700,000 of the sale.

94.     This amount ($700,000) is less than 50% (or less than half) of the total amount that the Plaintiff and his assign provided to the Seller for the closing on the landmark building on Closing Day, July 15, 2014.

95.     That total ($1,440,284.59) was provided with no owner financing needed for the Plaintiff and his assign to close.

96.     The attached Warranty Deed and Loan Assumption documents identify the November 12, 2014 sale of the landmark YMCA building to the Intervenor, and include a description of the owner financing that the Seller provided to the Intervenor, for less than half (50%) of the purchase price.

97.     The Seller also kept $166,000 of deposit money that the Plaintiff had provided to the Seller for the Nestor Purchase Contract and Closing, which amounted to unjust enrichment.

98.     A final order was entered on June 10, 2015, nunc pro tunc to September 19, 2014.

99.     The Seller is quoted in the final order expressing willingness to forgo $72,000 that they claimed at the Emergency Hearing the Plaintiff still owed the Seller, if the Plaintiff did not win his appeal.

100.    This is the same $72,000 that was so crucial to the closing where the Seller refused to transfer the deed of the landmark building to the Plaintiff and his assign.

101.    For the Appeal, counsel for the Intervenor represented both the Seller and the Intervenor.

102.    The transcript for the Emergency Hearing, and the Appellees' Answer Brief filed on February 3, 2015, both confirm that an evidentiary hearing did not take place, nor was a continuance provided for the Plaintiff, on September 4th 2014.

103.    A Per Curiam Affirmance denying the Plaintiff's appeal was entered on September 25, 2015.

104.    The Second District Court of Appeals did not provide a written opinion to explain their ruling.

105.    The Plaintiff motioned the appellate court for a written opinion, for certification, for rehearing, and for rehearing en banc on October 10, 2015.

106.    The motion stated that the appellate court had issued a Per Curiam Affirmance on September 25th, 2015 and requested a written opinion for a better opportunity at appealing to the Florida Supreme Court for review.

107.    An order denying the Plaintiff's request for a rehearing and an issuance of a written opinion was entered on November 20, 2015.

108.    The mandate denying the motion and ratifying the November 20, 2015 order was entered on December 30, 2015.

109.    A motion to the Supreme Court of Florida took place on January 30, 2016.

110.    The Supreme Court of Florida denied the motion on February 1, 2016.

111.    A master order dismissal was signed and entered on March 8, 2017.

112.    On or about July 23, 2014, the Seller and the Intervener filed separate Emergency Motions to Enforce Settlement Agreement

113.    Seller and Intervener claimed the Plaintiff breached the Settlement Agreement by failing to pay the correct amount to close and assigning the Purchase Contract to an unrelated entity.

114.    The unrelated entity claim was raised eight (8) days after the Closing Deadline.

115.    An Emergency Hearing originally scheduled for July 30, 2014 was cancelled after a motion fromcounsel for the Seller and rescheduled by Defendant Judge Day for September, 4th 2014.

116.    The Hearing was scheduled for 30-minutes.

117.    Transcript from the Hearing is attached as "Exhibit C"

118.    At the Hearing, counsel for the Seller and the Intervener misrepresented critical facts relating to contractual obligations between the Buyer and the Seller.

119.    Counsel for the Seller and Intervenor omitted critical facts in describing what took place on closing day.

120.    Counsel for the Seller presented false testimony under oath.

121.    Such misrepresentations and omissions were material to the Contract.

122.    Defendants Seller and Intervenor stated in court that "there may be factual disputes."

123.    Defendants Seller and Intervenor used the Plaintiff's two (2) days of deposition testimony transcript for support of their argument.

124.    Defendants Seller and Intervenor presented to Defendant Judge Day a tabbed notebook with all their exhibits.

125.    Defendant Judge Day allowed Defendants Seller and Intervenor to present slides on a projector screen.

126.    Defendants Seller and Intervener agreed to allow "all evidence" to be presented without objection.

127.     Defendants Seller and Intervener completed their full presentation to the court.

128.    Defendant Judge Day then ruled in their favor.

129.     Plaintiff's Counsel objected stating:

"Judge, I feel compelled to point out that the only evidence that you've seen is the evidence of one of the parties. You haven't reviewed any of Mr. Nestor's exhibits, nor had any testimony."

130.    Defendant Judge Day denied Plaintiff an Evidentiary Hearing.

131.    Defendant Judge Day refused to allow Plaintiff to present breach of contract claims against the Seller.

132.    Defendant Judge Day refused to allow Plaintiff to present evidence.

133.    Defendant Judge Day refused to allow Plaintiff to testify.

134.    Defendant Judge Day refused to allow Plaintiff's witness, who was present, to testify.

135.    Plaintiff and Witness were both subpoenaed by the Court to appear for an Evidentiary Hearing, and to testify.

136.    Defendants Seller and Intervenor did not provide Plaintiff with a copy of Plaintiff's deposition prior to the Hearing.

137.    The Plaintiff was ready to fully present his case, with his counsel,stating:

"I have my exhibits to proceed with at trial. I have my trial exhibits, just as they (Defendants) have their trial exhibits."

138.    Defendant Judge Day stated: "it is not an evidentiary hearing," and "did you expect to have an evidentiary hearing in 30-minutes dug out at lunchtime on a weekday?"

139.    Defendant Judge however stated earlier in the Hearing, prior to ruling, that "there may be a need for that" (an evidentiary hearing) and "It's starting to sound like it."

140.    The Judge also stated early on in the proceeding "I've got quite a volume of material here that I've reviewed on behalf of the moving party (Defendants) and "I don't want to deprive anybody of their say."

141.    Defendant Judge Day stated "but you (Defendants) had a half an hour for this hearing and we've spent half of it -- if you had let me know you had a posse, we could have reserved space ahead of time."

142.    Counsel for the Plaintiff advised Defendant Judge Day that Plaintiff had not had an opportunity to read the transcript for two (2) days of his deposition.

143.    Defendant Judge Day responded by commenting: "I can't bog this thing down for -- my next hearing time is available in January, okay?"

144.    Defendant Judge Day required Plaintiff to proffer some of the evidence Defendant Judge Day might consider.

145.    Defendant Judge Day requested this of the Plaintiff after Defendant Judge Day has already ruled.

146.    Defendant Judge Day did not require the Defendants Seller and Intervenor to proffer any evidence before presenting their case.

147.     Defendant Judge Day ruled against the Plaintiff based on the evidence of one side claiming that two (2) breaches occurred with the Purchase Contract and the Settlement Agreement.

148.     Defendant Judge Day  stated that both breaches "were material" breaches.

149.     A Non-Final Order was signed on September 19, 2014 that read as follows: Thomas J. Nestor, his successors and assigns materially breached the Purchase and Sale Agreement ("P&S"), First Addendum to Purchase and Sale Agreement and Settlement Agreement and Mutual Release (collectively the "Nestor Contract") by assigning the Nestor Contract to an unrelated entity and failing to pay the correct amount to close in immediately negotiable funds by 5 p.m. on July 15, 2014. As a  result, Nestor's rights under the Nestor Contract are terminated.

150.      Plaintiff exhausted all other  means to obtain relief prior to this action.


**COUNT I-DUE PROCESS RIGHT TO A HEARING**

151.     Plaintiff realleges Paragraphs 1 through 150.

152.      By  doing so, Defendant Judge Day required Plaintiff to prove his due process right to a evidentiary hearing.

153.     Failure to hold an evidentiary hearing caused Plaintiff's damages.

154.     Defendant Judge Day's actions caused Plaintiff's damages.

155.     Defendant Judge Day's actions deprived Plaintiff of property.

156.     By failing to hold an evidentiary hearing, Defendant Judge Day violated Plaintiff's due process rights.

WHEREFORE, the Plaintiff petitions that this Court find the Defendant Judge Day liable for violation of the Plaintiff's due process right to be heard and reward relief this Court deems just and proper, including costs and attorney's fees.

## COUNT II-14TH AMENDMENT RIGHT TO AN IMPARTIAL TRIAL

157.    Plaintiff realleges Paragraphs 1-156.

158.    Defendant Judge Day allowed Defendants Seller and Intervenor to present evidence in the Emergency Hearing.

159.    Defendant Judge Day allowed Defendants Seller and Intervenor to present demonstrative aids and exhibits in the Hearing.

160.    Defendant Judge Day did not allow Plaintiff to present evidence, aids or exhibits in the Hearing.

161.    Defendant Judge Day ruled prior to allowing Plaintiff to present his case.

162.    Defendant Judge Day failed to conduct a fair and impartial hearing.

163.    By doing so, Defendant Judge Day violated Plaintiff's right to a fair trial.

164.    Defendant Judge Day's conduct caused Plaintiff's Damages.

WHEREFORE, the Plaintiff petitions that this Court find the Defendant Judge Day liable for violation of the Plaintiff's due process right to a fair trial and reward relief this Court deems just and proper, including costs and attorney's fees.

**COUNT III-UNJUST ENRICHMENT ONLY AS TO DEFENDANTS VPC3 II, LLP, and N.E. APARTMENTS ASSOCIATES, INC.**

165.　Alternatively, Plaintiff realleges and incorporates the allegations in paragraphs 1-164.

166.　If the Purchase Contract or Settlement Agreement attached as "Exhibit A" and "Exhibit B" are deemed void, invalid or otherwise unenforceable against either Defendant, Plaintiff has conferred a benefit on Defendants.

167.　Plaintiff and his assign fully performed under Exhibits A and B.

168.　Defendant Intervenor voluntarily accepted and retained the benefit conferred.

169.　The circumstances render Defendants' retention of the benefit inequitable unless the Defendant pays to Plaintiff the value of the benefit.

170.　Defendants have been unjustly enriched at the expense of Plaintiff.

171.　Plaintiff is entitled to damages as a result of Defendants' unjust enrichment, including reasonable value of s benefit accepted by Defendant Company from Plaintiff.

172.　Plaintiff was further injured by Defendant Intervenor obtaining title to the landmark YMCA Property.

WHEREFORE, the Plaintiff petitions that this Court find the Defendants Seller and Intervenor liable for unjust enrichment and reward relief this Court deems just and proper, including costs and attorney's fees.

**COUNT  IV FIFTH AMENDMENT DUE PROCESS VIOLATION**

173.　Alternatively, Plaintiff realleges and incorporates the allegations in paragraphs 1-172.

174. The Due Process Clause in the Fifth Amendment of the United States Constitution reads: "No person shall ... be deprived of life, liberty, or property, without due process of law" .

175. By failing to provide Plaintiff with a hearing, Defendant Judge Day violated Plaintiff's due process rights resulting in him being deprived of property.

176. Defendant Judge Day's conduct caused Plaintiff's Damages.

**COUNT VI VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT**

177. The Court has jurisdiction of this action under Title II of the ADA, 42 U.S.C. §§ 12131-12132, and 28 U.S.C. §§ 1331 and 1345. The Court may grant the relief sought in this action pursuant to 28 U.S.C. §§ 2201 and 2202. Venue is proper in this district pursuant to 28 U.S.C. § 1391, as a substantial portion of the acts and omissions giving rise to this action occurred in the Middle District of Florida. 28 U.S.C. § 1391(b).

178. The allegations of Paragraphs 1 through 172 are hereby realleged and incorporated by reference.

179. Title II of the ADA requires that State and local governments give people with disabilities an equal opportunity to benefit from all of their programs, services, and activities (e.g. public education, employment, transportation, recreation, health care, social services, courts, voting, and town meetings).

180. Defendant Judge Day in his official capacity with the Court administers access to justice and the judicial system.

181. The Court is a "public entity" within the meaning of the ADA, 42 U.S.C. § 12131(1); 28 C.F.R. § 35.104, and is therefore subject to title II of the ADA, 42 U.S.C. §§ 12131 et seq., and its implementing regulations, 28 C.F.R. Part 35.

182. Plaintiff is a qualified person with a disability.

183. Plaintiff informed Defendant Judge Day of his disability and requested reasonable accommodation.

184. Defendants discriminate against "qualified individual[s] with a disability," within the meaning of the ADA, by denying reasonable accommodations in the judicial process.

185. These individuals are qualified to receive services in a more integrated setting and do not oppose receiving services in a more integrated setting. The relief sought would not constitute a "fundamental alteration" of the State's behavioral health service system because the State already provides the services that the Patients require to live in a more integrated setting. , there is no defense for the State's failure to provide services in a more integrated setting.

186. The Judge Day's actions as alleged herein constitute discrimination in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulations

### REQUEST FOR RELIEF AND DAMAGES

Wherefore the Plaintiff requests that this Court:

1. Remand the case for full evidentiary review and for compensatory damages, attorney's fees and costs, and any other such relief this Court deems fair, just and honorable;

2. In the alternative enter a declaratory judgment for Plaintiff finding Plaintiff complied with the closing requirements for the landmark YMCA property and is the rightful owner of the rights to the Property, thus enforcing agreements made between the Plaintiff and Defendant Seller;

3. Enter Injunctive relief preventing Defendant Intervenor from transferring title to the landmark Property again or to another third party;

Plaintiff demands a trial by jury.


Respectfully Submitted,

_____

Amber Robinson, Esq.
Florida Rights Law Firm
Fla. Bar No. 0107215
695 Central Ave Ste. 264
St. Petersburg, FL 33701
Arobinsonlawfirm.com
arobinson@arobinsonlawfirm.com
(813) 613-2400 (phone)
(727) 362-1979 (fax)
*Counsel for Plaintiff*

_____

Ralph Strzalkowski, Esq.
Florida Bar No. 89248
 Florida Rights Law Firm
695 Central Ave Ste. 264
St. Petersburg, FL 33701
rs@lawyeronwheels.org
(352) 262-9593 (phone)
*Counsel for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that the foregoing was served through the United States District Court, Middle District of Florida e-filing portal to: Camille J. Iurillo, Esq., Iurillo Law Group, P.A., 5628 Central Avenue, St. Petersburg, FL 33707, at: ciurillo@iurillolaw.com; Alice R. Huneycutt, Esq., and Darrin J. Quam, Esq., Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, P.A., 401 East Jackson Street, Suite 2200, Tampa, FL 33602; P.O. Box 3299, Tampa, FL 33601, at: ahuneycutt@stearnsweaver.com, and jbenford@stearnsweaver.com; and dquam@stearnsweaver.com, and jwade@stearnsweaver.com; and Russell L. Cheatham, III, Esq., The Law Offices of Russell Cheatham, III, P.A., at russ@russellcheatham.com; this 2nd day of June 2020. Service was made to all the parties on the service list.


Respectfully Submitted,


_____
Amber Robinson, Esq.
Florida Rights Law Firm
Fla. Bar No. 0107215
695 Central Ave Ste. 264
St. Petersburg, FL 33701
Arobinsonlawfirm.com
arobinson@arobinsonlawfirm.com
(813) 613-2400 (phone)
(727) 362-1979 (fax)
*Counsel for Plaintiff*

_____
Ralph Strzalkowski, Esq.
Florida Bar No. 89248
Florida Rights Law Firm
695 Central Ave Ste. 264
St. Petersburg, FL 33701
rs@lawyeronwheels.org
(352) 262-9593 (phone)
*Counsel for Plaintiff*