UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THOMAS J. NESTOR,

     Plaintiff,

v.

                                       **Dispositive Motion**
                                       Case No.: 8:20-cv-00265-CEH-TGW

VPC3 II, LLP,
a Florida Limited Liability
and N.E. APARTMENTS
ASSOCIATES, INC.,
a Florida Corporation,
JUDGE JACK DAY
In his official capacity for declaratory judgment only,
Defendants.,

     Defendants.

_____/

## DEFENDANT JUDGE JACK DAY'S MOTION TO DISMISS [SECOND] AMENDED COMPLAINT (DOC. 12)

**COMES NOW**, Defendant Judge Jack Day by and through undersigned counsel, and hereby moves to dismiss the claims asserted in the Second Amended Complaint (Doc. 12), hereinafter "SAC", filed by Plaintiff Thomas J. Nestor. Pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure, Plaintiff's claims fail for lack of subject-matter jurisdiction and due to failure to state a claim upon which relief can be granted. Since amendment would be futile, this case should be dismissed with prejudice.

<u>**MEMORANDUM OF LAW**</u>

**I.    Facts and Procedural Background**

Plaintiff sues Judge Jack Day, retired judge of Florida's Sixth Judicial Circuit in his official capacity, N.E. Apartments Associates, Inc., a Florida corporation, and VPC3 II, LLP, a Florida limited liability partnership. (Doc. 12 at 1). The injuries which Plaintiff seeks to redress in the instant action occurred during his state court breach of contract case concerning a real estate transaction presided over by the Judge Day. (Doc. 12, ¶¶ 22, 24).

Plaintiff, through his attorneys, initiated this action with the filing of his Complaint (Doc. 1) on February 3, 2020. Prior to serving any of the Defendants, Plaintiff filed an Amended Complaint (Doc. 6) on June 2, 2020. After the Amended Complaint was dismissed by the Court *sua sponte* because it constituted an impermissible shotgun pleading (Doc. 11), Plaintiff filed a Second Amended Complaint (Doc. 12), which is erroneously titled "Amended Complaint." For clarity and ease of reference, the Second Amended Complaint (Doc. 12) will be referred to as the "SAC" herein. The Court's dismissal order directed Plaintiff to ensure that any subsequent complaint avoided shotgun pleading pitfalls and complied with applicable pleading requirements. (Doc. 6 at 2). The dismissal order provided a helpful roadmap to Plaintiff on how to remedy the multitude of pleading deficiencies and even pointed out that Count V had been mislabeled as Count VI. Id. Rather than heeding the Court's warnings and redrafting this woefully deficient pleading, Plaintiff filed a virtually identical subsequent complaint at the eleventh hour on September 14, 2020. (Doc. 12).

Plaintiff willfully ignored the Court's directive to correct his pleading deficiencies, so much so that he didn't even bother to retitle the pleading or correctly label Count V. (Doc. 12 at 2, 22).

In the five-count SAC, Plaintiff asserts claims for "due process right to a hearing" (Count I); "14th Amendment right to an impartial trial" (Count II); "unjust enrichment" (Count III); "Fifth Amendment due process violation" (Count IV); and "violations of the Americans with Disabilities Act" (Count V – again mislabeled as Count VI). Plaintiff recounts the events of his state court case which serves as the basis for the instant action in painstaking detail over the course of 17 pages and 147 paragraphs. (Doc. 12, pp. 3-20, ¶¶ 1-147).

Plaintiff has made the following allegations concerning Judge Day:

i.   Judge Day presided over Plaintiff's state court breach of contract case filed on March 23, 2014 in Pinellas County Circuit Court. (Doc. 12, ¶¶ 22, 24).

ii.  Plaintiff's state court case concerned a real estate transaction for a landmark historic building in St. Petersburg which had previously served as a YMCA. (Doc. 12, p. 3, ¶¶ 1-25).

iii. Plaintiff intended to purchase the YMCA Building from Defendant VPC3 II, LLP pursuant to a Purchase Contract and redevelop it into an entertainment venue (Doc. 12, ¶¶ 9-11), but a dispute regarding assignability of the Purchase Contract arose and the transaction fell through, leading Plaintiff to file suit in state court. (Doc. 12 at pp. 3-6).

iv.  On June 26, 2014, Plaintiff and Defendant VPC3 II, LLP entered into a Settlement Agreement to resolve the issues in the state court case. The Settlement Agreement also allowed another party into the litigation, Defendant N.E. Apartments Associates, Inc. (Doc. 12, ¶ 30-31). Judge Day ratified this Settlement Agreement. (Id. at ¶ 32).

v.  Pursuant to the Settlement Agreement, Plaintiff and Defendants VPC3 II, LLP and N.E. Apartments Associates, Inc. "reinstated" the Purchase Contract for the sale of the YMCA Building. (Doc. 12, ¶ 32). However, due to a number of events and convoluted issues regarding assignability of the Purchase Contract to various entities explained over the course of 50 paragraphs (Doc. 12, ¶¶ 33-83) in the SAC, the sale once again fell through. (Doc. 12, ¶ 83).

vi.  On July 23, 2014, Defendants VPC3 II, LLP and N.E. Apartments Associates, Inc. filed Emergency Motions to Enforce the Settlement Agreement and a hearing was held before Defendant Judge Day on September 4, 2014. (Doc. 12, ¶¶ 84-85, 112).

vii.  The hearing on these motions was originally scheduled for July 30, 2014 but was reset to September 4, 2014 by Defendant Judge Day pursuant to a motion from counsel for Defendant VPC3 II, LLP. (Doc. 12, ¶ 112). The September 4, 2014 hearing had been noticed for 30 minutes. (Doc. 12, ¶ 113).

viii.  Plaintiff alleges that during the September 4, 2014 hearing, Co-Defendants attempted to confuse and defraud Defendant Judge Day by misrepresenting and omitting important facts and offering perjured testimony. (Doc. 12, ¶¶ 85, 115-18).

ix. At the hearing on September 4, 2014, Defendant Judge Day permitted the Co-Defendants to present slides on a projector screen, submit a tabbed notebook with hearing exhibits, and use Plaintiff's deposition testimony transcript to support their argument. (Doc. 12, ¶¶ 120-22).

x. After Co-Defendants completed their in-court presentation at the September 4, 2014 hearing, Defendant Judge Day ruled in Co-Defendants' favor and subsequently issued a non-final order to this effect on September 19, 2014. (Doc. 12, ¶¶ 86-87, 125).

xi. Defendant Judge Day's September 19, 2014 Order memorialized the in-court ruling finding that Plaintiff had materially breached the Purchase Agreement through an assignment to an unrelated entity and failure to pay the correct amount by 5 p.m. on the scheduled closing day. (Doc. 12, ¶¶ 145-46).

xii. After the ruling, counsel for Plaintiff objected, arguing that Defendant Judge Day had not reviewed any of Plaintiff's exhibits or heard testimony from Plaintiff. Plaintiff alleges that Defendant Judge Day refused to let Plaintiff present his evidence or allow Plaintiff or his witness, who was also present in court, to testify in Plaintiff's favor. (Doc. 12, ¶¶ 126-31). Plaintiff submits that these actions amounted to a denial of an evidentiary hearing. (Doc. 12, ¶ 127).

xiii. Plaintiff submits that Defendant Judge Day stated that the September 4, 2014 hearing was "not an evidentiary hearing" though earlier in the hearing and prior to issuing his ruling, Judge Day had stated there "may be a need for [an evidentiary hearing]" and that "[i]t's starting to sound like it." (Doc. 12, ¶¶ 135-36).

xiv. At the September 4, 2014 hearing, Defendant Judge Day stated that he had reviewed a large volume of material submitted by Co-Defendants. Counsel for Plaintiff advised Defendant Judge Day that Plaintiff had not had an opportunity to read the transcript for two days of his deposition, and Judge Day responded: "I can't bog this thing down for -- my next hearing time is available in January, okay?". (Doc. 12, ¶¶ 137-140).

xv. After issuing his ruling, Defendant Judge Day required that Plaintiff proffer some evidence for possible consideration. (Doc. 12, ¶ 141-42).

xvi. On September 22, 2014, Plaintiff appealed Defendant Judge Day's decision to the Second District Court of Appeals. (Doc. 12, ¶ 88). While the appeal was still in its early stages and prior to the submission of Plaintiff's Initial Brief, Defendant VPC3 II, LLP sold the YMCA Building to Defendant N.E. Apartments Associates, Inc., the back-up purchaser named in the Settlement Agreement. (Id. at ¶¶ 30, 89).

xvii. The Second DCA denied Plaintiff's appeal on September 25, 2015 and issued a *per curiam* affirmance of Defendant Judge Day's order without an accompanying written opinion. (Doc. 12, ¶ 100-01).

xviii. Plaintiff subsequently motioned the Second DCA for a written opinion, certification, rehearing and rehearing *en banc*. Plaintiff sought a written opinion for a better opportunity at appealing to the Florida Supreme Court. (Doc. 12, ¶¶ 102-03). The Second DCA denied said motion and issued a mandate on December 30, 2015. (Doc. 12, ¶¶ 104-05).

xix.  Plaintiff then unsuccessfully motioned the Florida Supreme Court to review the case; a master dismissal order was entered on March 8, 2017. (Doc. 12, ¶¶ 106-08).

Plaintiff requests preliminary and permanent injunctive relief, damages, declaratory relief and attorneys' fees. (Doc. 12, p. 2, ¶¶ 2-4). Plaintiff asserts four Counts against Defendant Judge Day, all brought pursuant to 42 U.S.C. § 1983: Count I - "due process right to a hearing"; Count II - "14th Amendment right to an impartial trial"; Count IV - "Fifth Amendment due process violation"; and Count V, again mislabeled as Count VI - "violations of the Americans with Disabilities Act." Plaintiff requests that this Court order a remand of the state court case for full evidentiary review and for compensatory damages, attorney's fees and costs or alternatively enter a declaratory judgment in Plaintiff's favor finding Plaintiff complied with the closing requirements in the Purchase Contract and is the rightful owner of the YMCA Building. (Doc. 12, p. 24 ¶¶ 1-3).

## II.  Legal Standards Under Rules 12(b)(1) and 12(b)(6)

"Subject matter jurisdiction must be affirmatively shown in the record before considering the merits of any case." *Ramirez v. Gonzalez*, No.  6:08-cv-20-Orl-19-GJK, 2008 WL 190589, at *1 (M.D. Fla. Jan. 22, 2008) (citing *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005)). If at any point during a proceeding a court determines it lacks subject matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3); *Lazarre v. JPMorgan Chase Bank, N.A.*, 780 F. Supp.2d 1320, 1323-24 (S.D. Fla. 2011).

In ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all of the allegations contained in the complaint and construes them in light most favorable to the plaintiff. *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004). Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. While "the pleading standard Rule 8 announces does not require detailed factual allegations…it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

A complaint may be dismissed if the facts plead do not "state a claim to relief that is plausible on its face*." Twombly*, 550 U.S. at 556. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Id.* The plausibility standard demands "more than a sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678. Indeed, allegations showing "[t]he mere possibility the defendant acted unlawfully [are] insufficient to survive a motion to dismiss."

*Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009). Therefore, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations omitted).

## III.  Argument

### A. The Second Amended Complaint Fails for Lack of Subject-Matter Jurisdiction.

#### i.  The Court lacks subject-matter jurisdiction pursuant to the *Rooker-Feldman* doctrine.

Though Plaintiff haphazardly asserts claims for alleged civil rights violations, his pleading is a *de facto* improper collateral attack on an unfavorable state court ruling. To the extent Plaintiff is seeking review of a state court ruling or judgement, this Court lacks jurisdiction over such claims under the *Rooker-Feldman* doctrine. *See D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). "The doctrine is a jurisdictional rule that precludes the lower federal courts from reviewing state court judgments." *Alvarez v. Att'y Gen. for Fla.*, 679 F.3d 1257, 1262 (11th Cir. 2012). This jurisdictional bar "extends not only to constitutional claims presented or adjudicated by a state court, but also to claims that are 'inextricably intertwined' with a state court judgment." *Incorvaia v. Incorvaia*, 154 F. App'x 127, 128 (11th Cir. 2005) (internal citations omitted). A federal claim is inextricably intertwined with a state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. *Goodman ex. rel Goodman v. Sipos*, 259

F. 3d 1327, 1332 (11th Cir. 2001). *See also Alvarez v. Attorney Gen. for Fla.*, 679 F.3d 1257, 1262 (11th Cir. 2012) (holding that the doctrine is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments). The doctrine bars federal court jurisdiction where the following factors exists: (1) the party in federal court is the same as the party in state court; (2) the prior state court ruling was a final or conclusive judgment on the merits; (3) the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state court proceeding; and (4) the issue before the federal court was either adjudicated by the state court or was inextricably intertwined with the state court's judgment. *Nicholson v. Shafe*, 558 F.3d 1266, 1272 (11th Cir. 2009).

Here, all four elements of the *Nicholson* test are met. With respect to the first element, the parties here are the same as in the state court case. As to the second element of the test, Plaintiff's state court breach of contract case ended in a final order in favor of the Co-Defendants, entered on June 10, 2015 *nunc pro tunc* to September 19, 2014 resolving the case on the merits and finding Plaintiff to have breached the contract. (Doc. 12, ¶ 95). The third *Nicholson* element has also been met, as Plaintiff filed a subsequent unsuccessful appeal to Florida's Second District Court of Appeals and then an unsuccessful motion for review to the Florida Supreme Court. (Doc. 12, ¶¶ 88, 99-108). On appeal, Plaintiff unsuccessfully made the same arguments as he does here – that he was wrongfully denied an evidentiary hearing. (Doc. 12, ¶ 99). As to the fourth *Nicholson* factor, Plaintiff is expressly dissatisfied with the outcome of

Judge Day's ruling at the September 14, 2014 hearing and seeks precisely the type of review prohibited by the *Rooker-Feldman* doctrine.[1] Plaintiff is the state court loser in his state court breach of contract case and his grievances against the Defendants herein are inextricably intertwined with the state court decision. The instant case is Plaintiff's attempt at a Hail Mary after the clock has run out and should be rejected.

Accordingly, this Court should not exercise jurisdiction over Plaintiff's claims and dismiss the instant case with prejudice pursuant to the *Rooker-Feldman* doctrine.

## B. The Second Amended Complaint Fails to State a Claim Upon Which Relief Can Be Granted.

To the extent that the Second Amended Complaint may be construed to state a cause of action not jurisdictionally barred under the *Rooker-Feldman* doctrine, the SAC is further subject to dismissal for the bevy of reasons described below.

### i. The Second Amended Complaint is a shotgun pleading due to be dismissed.

The Court previously dismissed Plaintiff's Amended Complaint for violating federal and local pleading rules and presenting claims though an unacceptable shotgun pleading that wasted the Court's time and failed to articulate claims with enough clarity to permit Defendants to frame a responsive pleading. See Doc. 11. Rather than submitting a conforming pleading on his third attempt to state these claims, Plaintiff's *two* attorneys filed a virtually identical Second Amended Complaint that did not so

---

[1] Plaintiff requests a declaratory judgment in his favor finding Plaintiff complied with the closing requirements for the YMCA Building and is its rightful owner. See Doc. 12, p. 2, ¶.

much as attempt to remedy any of the pleading deficiencies pointed out by the Court. Indeed, Plaintiff's counsel did not even bother to retitle the rejected pleading or number the Counts correctly. The only changes between the First Amended Complaint and the Second Amended Complaint appear to be: 1) a "consolidated" Statement of Facts, shortened from 150 paragraphs to 147 paragraphs;  and 2) signature blocks for Plaintiff's counsel in the Certificate of Service now appear vertically, rather than side by side. (See Doc. 6 at pp. 20, 26; Doc. 12 at pp. 20, 26). The SAC is an impermissible shotgun pleading that flagrantly ignores the Court's order requiring redrafting and should be dismissed.

### ii. Plaintiff's claims against Judge Day are barred by the statute of limitations.

The Eleventh Circuit has held that federal courts apply a state's statute of limitations for personal injury actions to complaints brought under 42 U.S.C. § 1983. Thus, the four-year limitations period in § 95.11(3), Fla. Stat., applies to § 1983 claims arising in Florida. *See Ellison v. Lester*, 275 F. App'x 900, 901 (11th Cir. 2008). In Florida, a Plaintiff must commence § 1983 claim within four years of the allegedly unconstitutional or otherwise illegal act. *McGroarty v. Swearingen*, 977 F.3d 1302, 1307 (11th Cir. 2020). The statute of limitations begins to run when "the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Lovett v. Ray*, 327 F.3d 1181, 1182 (11th Cir. 2003) (internal citation omitted).

The SAC alleges that Defendant Judge Day violated Plaintiff's constitutional rights while conducting a motion hearing in Pinellas County Circuit Court on September 4, 2014. Accordingly, Plaintiff's claim accrued on September 4, 2014 and his deadline to file a § 1983 action was September 4, 2018, four years from the date of that hearing. Plaintiff, however, did not commence the instant action until February 3, 2020. (Doc. 1).  Thus, all of Defendant Judge Day's allegedly unconstitutional acts are time barred and due to be dismissed. *See Vanbenthuysen v. Florida*, 427 F. App'x 864, 866-67 (11th Cir. 2011) (affirming dismissal with prejudice of § 1983 claims based on entry of orders in divorce proceeding occurring more than four years before filing of § 1983 complaint).

Plaintiff's subsequent pursuit of appeals through the state court system did not toll the statute of limitations. The Eleventh Circuit has instructed district courts to look to state law in deciding whether to toll the statute of limitations in a § 1983 case. *See Lawson v. Glover*, 957 F.2d 801, 805 (11th Cir. 1987) (deferring to the Georgia Court of Appeals' interpretation of the Georgia tolling statute); *see also Lewis v. Broward Cty. Sch. Bd.*, 489 F. App'x 297, 298–99 (11th Cir. 2012). By statute, Florida law tolls the applicable statute of limitations in nine enumerated circumstances. *See* Fla. Stat. § 95.051(1). The foregoing statutory list is exhaustive. *See Major League Baseball v. Morsani*, 790 So. 2d 1071, 1075 (Fla. 2001) (holding that § 95.051 delineates an exclusive list conditions that can toll the applicable statute of limitations). None of the nine enumerated conditions set out in the Florida tolling statute applies here.

Accordingly, Plaintiff's claims against Defendant Judge Day are time-barred and due to be dismissed.

> ### iii.  Judge Day in his official capacity is not a proper defendant in a § 1983 action and Plaintiff's claims are barred by sovereign immunity.

Plaintiff asserts that he is suing Judge Day in his official capacity pursuant to 42 U.S.C. § 1983. To state a cognizable claim under 42 U.S.C. § 1983, a plaintiff must allege the deprivation of a constitutional or federal statutory right by someone acting under of state law. *Doe v. Sch. Bd. of Broward Cty., Fla.*, 604 F.3d 1248, 1265 (11th Cir. 2010). Section 1983 authorizes assertion of a claim for relief against a "person" who acted under color of state law. A suable § 1983 "person" encompasses state and local officials sued in their personal capacities, municipal entities, and municipal officials sued in an official capacity, but not states and state entities. A claim against a state or municipal official in her official capacity is treated as a claim against the entity itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Florida's Sixth Judicial Circuit is a state entity and a claim against Judge Day in his official capacity is treated as a claim against the Sixth Judicial Circuit. Because a state entity is not a proper defendant in a § 1983 action, the official capacity claim against Judge Day is likewise improper. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that a state is not a "person" liable to suit under § 1983).

Additionally, to the extent that the SAC can be read to seek damages[2] against Judge Day in his official capacity, such damages are barred by the Eleventh Amendment to the United States Constitution. Absent waiver or an abrogation by Congress, the Eleventh Amendment is an absolute bar to actions for damages in federal courts against a state or one of its agencies. *Gamble v. Fla. Dep't of Health & Rehab. Svcs.*, 779 F.2d 1509, 1511 (11th Cir. 1986). An assertion of Eleventh Amendment immunity challenges a court's subject matter jurisdiction and "must be resolved before a court may address the merits of the underlying claim(s)." *Seaborn v. State of Fla., Dep't of Corrs.*, 143 F.3d 1405, 1407 (11th Cir. 1998). Moreover, Florida has not waived its Eleventh Amendment sovereign immunity and consented to suit in federal court. Section 768.28(16), Fla. Stat., provides:

> No provision of this section, or of any other section of the Florida Statutes, whether read separately or in conjunction with any other provision, shall be construed to waive the immunity of the state or any of its agencies from suit in federal court, as such immunity is guaranteed by the Eleventh Amendment to the Constitution of the United States, unless such waiver is explicitly and definitely stated to be a waiver of the immunity of the state and its agencies from suit in federal court...

This bar applies to suits for damages. Eleventh Amendment immunity is jurisdictional and fundamental in nature. *See Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 467 (1944). State courts are considered "arms of the state" and are immune from suit under the Eleventh Amendment. *Kaimowitz v. Fla. Bar*, 996 F.2d 1151, 1155 (11th Cir. 1993);

---

[2] While the caption and party identification segments of the SAC indicate that Judge Day is being sued "[i]n his official capacity for declaratory judgment only" (Doc. 12 at p. 1; p. 3, ¶ 9) other portions of the SAC could potentially be read to assert a claim for damages against Judge Day. For example, in Count IV Plaintiff alleges that Judge Day's conduct violated Plaintiff's due process rights and caused Plaintiff's damages. (Doc. 12, ¶¶ 172-73).

*see also Caffey v. Ala. Supreme Ct.*, 469 F. App'x 748, 751 (11th Cir. 2012). Because Plaintiff sues Judge Day in his official capacity, Plaintiff's claims are barred by the Eleventh Amendment.

### iv.   Plaintiff's claims against Judge Day are barred by judicial immunity.

Judges are immune from liability for damages for acts committed in a judicial capacity and within their judicial discretion. *Simmons v. Conger*, 86 F.3d 1080, 1085 (11th Cir. 1996). Judicial immunity protects judicial independence by "insulating judges from vexatious actions prosecuted by disgruntled litigants." *Forrester v. White*, 484 U.S. 219, 225 (1988). "[A] district court may dismiss a claim based on absolute judicial immunity if it represents an 'obvious bar' based on the allegations in the complaint." *Williams v. Ala.*, 425 F. App'x 824, 825 (11th Cir. 2011) (internal citations omitted). Judges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the "clear absence of all jurisdiction." *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000). Absolute judicial immunity is applicable even when a judge's acts are erroneous, malicious or in excess of the judge's jurisdiction. *See Williams*, 425 F. App'x at 825. This absolute judicial immunity is intended to benefit the public interest of allowing judges the liberty to exercise their functions with independence and without fear of consequences. *Stevens v. Osuna*, 877 F.3d 1293, 1301 (11th Cir. 2017) (internal quotations omitted). The Eleventh Circuit has stated that:

> [w]hether a judge's actions were made while acting in his judicial capacity
> depends on whether: (1) the act complained of constituted a normal judicial
> function; (2) the events occurred in the judge's chambers or in open court; (3)
> the controversy involved a case pending before the judge; and (4) the
> confrontation arose immediately out of a visit to the judge in his judicial
> capacity.

*Id.* (citing *Scott v. Hayes*, 719 F.2d 1562, 1565 (11th Cir. 1983)). All these facts exist here. On September 4, 2014, Judge Day presided over a motion hearing in open court pursuant to a case pending on his docket, issued a ruling on the motions argued, and subsequently memorialized the ruling in a preliminary and then final order. These are indisputably normal judicial functions. *See, e.g.*, *William B. Cashion Nev. Spendthrift Tr. v. Vance*, 552 F. App'x 884, 887 (11th Cir. 2014) ("Entering orders is a normal judicial function occurring in judicial chambers."); *Abdul-Karim v. Dees*, 772 F. App'x 873, 874 (11th Cir. 2019) ("The complained-of act -- ruling on a party's motion -- is a normal judicial function."). The confrontation at issue here arose immediately out of that motion hearing. Because the acts complained of in the SAC constitute normal and quintessential judicial functions, absolute judicial immunity operates as an obvious bar to Plaintiff's allegations against Defendant Judge Day. Although Plaintiff seeks injunctive and declaratory relief in addition to potential damages, the SAC fails to plead the existence of any exception allowing for injunctive relief in the face of judicial immunity and is also subject to dismissal to the extent it seeks declaratory and injunctive relief. *See McCone v. Thorpe*, No. 6:19-CV-883-ORL-41-GJK, 2020 WL 1444032, at *3 (M.D. Fla. Mar. 25, 2020), aff'd, 828 F. App'x 697 (11th Cir. 2020).

Accordingly, judicial immunity applies here and bars Plaintiff's § 1983 claims against Judge Day in their entirety. *Murphy v. Stacy*, 809 F. App'x 677, 682 (11th Cir. 2020).

### v.  Plaintiff fails to state a claim for ADA Title II violations.

Plaintiff asserts that Defendant Judge Day violated Title II of the ADA but fails to explain what precisely Judge Day did that amounted to such a violation. Despite having recounted the events of his state court case with painstaking prolixity through 147 paragraphs in the Statement of Facts, Plaintiff mentions this vague ADA allegation for the first time in haphazard fashion in Paragraph 174 on page 23 of the SAC. Plaintiff asserts that he is a "qualified person with a disability" and that he informed Judge Day of the disability and requested reasonable accommodation. (Doc. 12, ¶¶ 179-180). Plaintiff does not articulate what this disability is, what accommodation he requested, or even that Judge Day denied the unnamed accommodation. Just how Judge Day discriminated against Plaintiff on the basis of this undisclosed disability is a mystery that cannot be unraveled from the woefully deficient facts pleaded in the SAC. In what is clearly a sloppy cut-and-paste job from a pleading in another case, Plaintiff states in Paragraph 182:

> These individuals are qualified to receive services in a more integrated setting and do not oppose receiving services in a more integrated setting. The relief sought would not constitute a "fundamental alteration" of the State's behavioral health service system because the State already provides the services that the Patients require to live in a more integrated setting. , there is no defense for the State's failure to provide services in a more integrated setting.

*Id.* It is clear that the instant case has nothing to do with State-provided behavioral health services, nor is the State even named as a Defendant.

18

Title II of the ADA prohibits a public entity from discriminating against a disabled individual because of that person's disability and provides that: [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. *Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1081 (11th Cir. 2007) (citing 42 U.S.C. § 12132). Title II protects a disabled plaintiff's right of access to the court system. *Tennessee v. Lane*, 541 U.S. 509, 523, 529, 533-534 (2004). "In order to state a Title II claim, a plaintiff generally must prove: (1) that [s]he is a qualified individual with a disability; (2) that [s]he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Bircoll*, 480 F.3d at 1083 (citing *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001)). Here, Plaintiff has given a bare-bones recitation of the applicable law without pleading any facts to support his ADA claim.

Title II is expected to apply in cases in which there is some physical, social or financial barrier to court access. *See Tennessee*, 541 U.S. at 523, 529, 533-534 (ADA protects a physically disabled litigant's right to access the court without any physical barriers, like stairs); *McCauley v. Ga.*, 466 F. App'x 832, 835 (11th Cir. 2012) (Court found that for a plaintiff suffering from lupus erythematosus, access to court had been preserved because she was granted the accommodation of appearing at the hearing via telephone); *Harrison v. Office of State Cts. Adm'r*, No. 6:06-cv-1878-Orl-19UAM, 2007

19

WL 156351, at * 2 (M. D. Fla. May 30, 2007) (Court rejected plaintiff's argument that the denial of his request for a real time court reporter impaired his access to the court). Plaintiff does not allege that he was denied access to the state courts. At best, Plaintiff has vaguely complained about the way Defendant Judge Jack Day managed a hearing during the course of his state court case. Accordingly, Plaintiff has failed to state a cause of action under the ADA.

## IV. Conclusion

Plaintiff's claims fail because this Court lacks subject matter jurisdiction and Plaintiff cannot state any claim stemming from his state court action upon which relief may be granted by this Court. There is no plausible claim Plaintiff can articulate against Defendant Judge Day based on the alleged facts. Accordingly, any amendment to these claims would also be futile.

**WHEREFORE**, Defendant Judge Jack Day respectfully requests that the Court dismiss this action with prejudice and award such other relief as the Court deems just and proper.

Respectfully submitted,

**ASHLEY MOODY**
**ATTORNEY GENERAL**

*/s/ Eugenia Izmaylova*
Eugenia Izmaylova
Senior Assistant Attorney General
Florida Bar No. 1003467
Office of the Attorney General
501 East Kennedy Blvd, Suite 1100
Tampa, Florida 33602
(813) 577-4528 – Telephone

(813) 233-2886 – Facsimile
Eugenia.Izmaylova@MyFloridaLegal.com
Christina.Santacroce@MyFloridaLegal.com
*Counsel for Defendant Judge Jack Day*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 29, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to those persons capable of receiving such notice of electronic filing.

*/s/ Eugenia Izmaylova*
Senior Assistant Attorney General

21