UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THOMAS NESTOR,     :
           :
    Plaintiff,   :
           :
v.          :  **Dispositive Motion**
           :  Case No. 8:20-cv-00265-T-36TGW
VPC3 II, LLP, N. E. APARTMENTS :
ASSOCIATES, INC. and JUDGE  :
JACK DAY,  in his official capacity, :
           :
    Defendants.  :
_____/

**DEFENDANTS VPC3 II, LLP AND N. E. APARTMENTS
ASSOCIATES, INC.'S MOTION TO DISMISS
[SECOND] AMENDED COMPLAINT (DOC. 12)**

Defendants, VPC3 II, LLP ("VPC3") and N. E. Apartments Associates, Inc. ("N. E. Apartments"), by and through their undersigned counsel, move to dismiss this case and the claims asserted in the [Second] Amended Complaint (Doc. 12) with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) due to the lack of subject-matter jurisdiction and for failure to state a claim.

**I. BACKGROUND**

**A. Current Federal Lawsuit**

This lawsuit was commenced on February 3, 2020.  Plaintiff sued a state court judge, Judge Jack Day ("Judge Day"), for purported constitutional and federal claims primarily arising from a September 4, 2014 hearing in which the

judge determined that Plaintiff failed to close a real estate transaction properly and timely, resulting in a material breach of a settlement agreement.  Doc. 1.

On June 2, 2020, Plaintiff filed an amended complaint (Doc. 6), which this Court *sua sponte* dismissed as an improper shotgun pleading.  Doc. 13. Subsequently, Plaintiff filed a second Amended Complaint.  Doc. 12.[1]

On December 11, 2020, this Court ordered Plaintiff to show cause why the case should not be dismissed for failure to have made service on the defendants within 90 days of filing the complaint.  Doc. 13.  Plaintiff responded (Doc. 14), and this Court entered an Order granting Plaintiff an extension of 30 days to effectuate service or the case would be dismissed.  Doc. 15.  Initial service of process was made on N. E. Apartments on January 20, 2021 and on VPC3 II on January 27, 2021.

### B.    Amended Complaint (Doc. 12)

In this action, Plaintiff seeks this Court to invalidate a state court ruling made at the September 4, 2014 hearing and to set aside the sale of real property that occurred on November 12, 2014.  Doc. 12, ¶ 89.   In the five-count Amended Complaint, Plaintiff attempts to assert claims for "due process right to a hearing" (Count I); "14th Amendment right to an impartial trial" (Count II); "unjust enrichment" (Count III); "Fifth Amendment due process violation" (Count IV); and "violations of the Americans with Disabilities Act" (Count V – labeled Count

---

[1] Plaintiff erroneously titled his second Amended Complaint as "Amended Complaint." Doc. 12.   Plaintiff's second Amended Complaint shall be referred to hereafter as "Amended Complaint" or "Doc. 12."

VI).  (Doc. 12).  Judge Day is the only defendant in Counts I, II, IV and V.  Count III for unjust enrichment is only asserted against VPC3 and N. E. Apartments.

The case is no more than an untimely effort to collaterally attack a 2014 Florida trial court decision which was affirmed by the Second District Court of Appeal of Florida in 2015.  Plaintiff's many objections to his failed real estate closing on July 15, 2014, and the trial court's determination at the September 4, 2014 hearing that Nestor breached the Settlement Agreement and Order Approving the Settlement Agreement, were all fully litigated and considered by the Florida state trial and appellate courts.[2]  Each of the factual allegations set forth in 147 paragraphs of the Amended Complaint were asserted or should have been raised in the state court case.

### C.    2014 State Trial Court Case No. 14-2358-CI

In *Nestor v. VPC3 II, LLC and N. E. Apartments Associates, Inc.*, in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida, Case No. 14-2358-CI, Plaintiff has already litigated the issues raised regarding deposits, the HUD-1 closing statements, the assignment of the purchase agreement, the failure to timely pay funds in immediately negotiable funds, whether Judge Day was required to hold an evidentiary hearing and the propriety of VPC3 selling the Property (defined below) to N. E. Apartments.

---

[2] It is noteworthy that Plaintiff flagrantly failed to comply with this Court's February 4, 2020 Related Case Order and Track Two Notice.  Doc. 3.  Plaintiff has not disclosed to the Court that Plaintiff filed four state court cases in the Sixth Judicial Circuit in and for Pinellas County, Florida and one appeal before the Second District Court of Appeal for the State of Florida, all related to Nestor's failed real estate closing on July 15, 2014.

Case No. 14-2358-CI commenced on March 28, 2014, when Nestor sued VPC3 in a two-count complaint seeking a declaratory judgment that Nestor's purchase and sale agreement, dated September 21, 2012, for the purchase of the historic YMCA building in St. Petersburg, Florida (the "Property"), as modified by an Addendum, dated July 24, 2013, respectively attached hereto as Exhibit "A" and Exhibit "B" (collectively, the "Nestor contract"),[3] was improperly terminated by VPC3 and for specific performance.  Jud. Not. 1.[4]  After the termination of the Nestor contract by VPC3 in March 2014, VPC3 agreed to sell the Property to N. E. Apartments.  Jud. Not. 12, pp. 1-2.  Nestor, aware that VPC3 had entered into a contract with N. E. Apartments, also sought to enjoin the sale of the Property to a third party.  Jud. Not. 1, p. 4.

VPC3, as the seller, filed an answer, affirmative defenses and counterclaim seeking a declaratory judgment that the Nestor contract was properly terminated, extensively detailing the facts regarding Nestor's failure to perform, including nonpayment of extension deposits, and the inability of Nestor to fund the closing.  Jud. Not. 3, pp. 4-7.  VPC3 also filed a motion to require Nestor to deposit

---

[3] A district "court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed.  In this context, 'undisputed' means that the authenticity of the document is not challenged."  *Day v. Taylor*, 400 F.3d 1272 (11th Cir. 2005) (citations omitted);  *Horne v. Potter*, 392 Fed. App'x 800, 802 (11th Cir. 2010).

[4] Pursuant to Rule 201, Fed. R. Evid., Defendants have filed concurrently herewith their Request for Judicial Notice (Doc. 32).  All references to the documents which are the subject of Defendant's Request for Judicial Notice shall be cited as "Jud. Not." followed by the document number of the attachment to the Request for Judicial Notice.

$72,000.00, the $18,000.00 monthly extension deposits for March, April, May and June 2014, purportedly held in trust by Nestor's attorney, into the registry of the Court.  Jud. Not. 5; Jud. Not. 20.a. 51:18-52:12; Jud. Not. 13, p. 41.  The trial was set for June 26, 2014.  Jud. Not. 9.

Nestor, VPC3 and N. E. Apartments reached a settlement which terms were orally presented to the Court for approval on June 26, 2014, the scheduled trial date.  Those terms were subsequently set forth in the Settlement Agreement and Mutual Release (the "Settlement Agreement") attached hereto as Exhibit "C," which was executed July 2, 2014.   Jud. Not. 10-11; Jud. Not. 12, Ex. A. The Settlement Agreement reinstated the Nestor contract and permitted Nestor until 5:00 p.m., EDT, July 15, 2014, to complete the closing on the purchase of the Property.  The Settlement Agreement, provided:

> Nestor shall have until 5 p.m. EDT on July 15, 2014, to close on the purchase of the Subject Property by delivering the closing documents and funds to VPC3 pursuant to the terms of the Nestor Contract (the "Closing Deadline").  *If for any reason Nestor fails to complete the closing of the purchase of the Subject Property, including delivery of all amounts due at closing in immediately available U.S. Funds, on or before 5:00 p.m. EDT on July 15, 2014, then all of Nestor's rights under the Nestor contract shall terminate and the Subject Property shall be sold pursuant to the Back-up Contract.*

Jud. Not. 12, p. 18 (emphasis added).   An Order Granting Joint Motion to Approve Settlement Agreement and Mutual Release was entered July 9, 2014, specifying that the provisions of the Settlement Agreement "are adopted as an Order of this Court."  Jud. Not. 11.  The Court retained jurisdiction to enforce the terms of the Settlement Agreement.  Jud. Not. 11, p. 2.

Nestor failed to close the transaction on July 15, 2014, in accordance with the terms of the Settlement Agreement. VPC3 and N. E. Apartments filed a motion to enforce the Settlement Agreement (Jud. Not. 12, 13), which was heard on September 4, 2014. Jud. Not. 20.a.

The parties had a vast record available at the September 4 hearing. All counsel had agreed prior to the hearing that all exhibits to the motions, all e-mails between them or regarding the transaction and HUD-1's were admissible into evidence for all purposes. Jud. Not. 20.a. 29:21-30:19. The Court made an independent inquiry to counsel for each party to confirm this agreement. Jud. Not. 20.a. 30:4-19. Thus, when the Court invited Nestor's counsel to proffer any evidence that would show Nestor had not breached the Settlement Agreement, Nestor had available virtually every document regarding the deal to bring to the attention of the Court, but he did not.

The record was uncontroverted that 1) all funds due at closing were not paid by 5:00 p.m. EDT in immediately negotiable funds; and 2) that the Nestor Contract had been assigned to an unrelated party. There was no factual dispute that Nestor had assigned the contract to an unrelated party, because Nestor admitted Boy Scout Holdings, LLC ("BSH"), the assignee, was not a related party. Jud. Not. 115. There was no factual dispute that the $72,000.00 was due at closing and was not paid in immediately negotiable funds by 5:00 p.m. on July 15, 2014. The record was replete with the acknowledgment by Nestor and his counsel that $72,000.00 was missing from the funds which were wired.

Instead, counsel for Nestor hand-delivered a check for $72,000.00 drawn on his trust account to the seller's attorney at approximately 6:30 p.m. EDT on July 15, 2014.  Jud. Not. 12, Ex. B.; Jud. Not. 20.a. 20:9-12.  Not only was such attempted payment untimely, but the check did not constitute "immediately available U.S. Funds."  In the hearing, counsel for Nestor admitted the $72,000.00 should have been paid at closing:

> **COURT:  What do you say?  Is 72,000 a part of the amounts due at closing, Mr. Cheatham?**
>
> **CHEATHAM:  That seems to be the crux of the issue, Your Honor.**
>
> **COURT:   I understand that's what she says; I'm asking if you dispute that.**
>
> **CHEATHAM:  *No, it was – it should have been paid in the closing....  But at all times, Mr. Nestor acknowledges that it was contemplated that it would be paid as part of the final closing.***

Jud. Not. 20.a. 21:2-9, 21:18-20 (emphasis added).

Nestor, having no funds to close, clearly was desperate to find anyone, related or not, to fund the closing.  The night before closing, he was sending e-mails soliciting funding, stating he had "nowhere else to go besides vultures, snakes and sharks."  Jud. Not. 16, p. 2.   He did not negotiate the assignment of the Nestor contract to BSH until the day of the closing, with the assignment to BSH occurring 45 minutes prior to the 5:00 p.m. closing deadline.  Nestor never advised BSH of the Settlement Agreement or its terms.  Jud. Not. 28, p. 18.

In an effort to deflect responsibility for his lack of diligence in assuring that all funds were properly and timely paid at closing, Nestor tried to blame the title company or VPC3, but the HUD-1's revisions and the confusion of the payment of the $72,000 were of the making by Nestor and his attorney.  The issues raised in the Amended Complaint were raised at the September 4, 2014 hearing.

The Court entered its Order granting the motions to enforce Settlement Agreement on September 22, 2014.  Jud. Not. 17.

### D.     State Court Appeal Case No. 2D14-4514

On September 23, 2014, Nestor filed a Notice of Appeal, seeking review by the District Court of Appeal of the State of Florida, Second District, of the September 22, 2014 Order.  Jud. Not. 26.  Nestor requested the trial court to enter a stay pending the appeal, which request was denied.  Jud. Not. 18.

A review of Nestor's Amended Initial Brief (Jud. Not. 27), VPC3 and N. E. Apartments' Answer Brief (Jud. Not. 28) and Nestor's Reply Brief (Jud. Not. 29) make clear that the same issues which Nestor now complains in the case *sub judice*, were raised, argued and decided by the state trial and appellate courts. Nestor's Reply Brief identified the issues on appeal as follows:

## TABLE OF CONTENTS

Page

Table of Citations ----------------------------------------------------------------------------------- iv,v

Introduction ---------------------------------------------------------------------------------------------1

Arguments ........................................................................................................

I.    WHETHER THE TRIAL COURT COMMITTED REVERSIBLE
      ERROR IN DENYING APPELLANT'S RIGHT TO AN
      EVIDENTIARY HEARING ................................................................................1

II.   WHETHER THE TRIAL COURT ERRED IN FINDING THAT
      APPELLANT MATERIALLY BREACHED BY ASSIGNING
      HIS RIGHTS TO AN "UNRELATED ENTITY." ................................................5

      A.  Seller Waived Any Objection to the Assignment to an "Unrelated Entity."
          ...............................................................................................................5

      B.  There was no Prohibition of an Assignment to an Unrelated Entity in
          the Contract, Nor a Requirement that Seller Approve the Assignment. ..........6

      C.  Any Breach Regarding Assignment was not Material. ................................8

III.  WHETHER THE TRIAL COURT ERRED IN FINDING THAT
      APPELLANT MATERIALLY BREACHED BY PAYING THE
      AMOUNT STATED ON THE FINAL HUD CLOSING
      STATEMENT IN CASH AND THE ADDITIONAL DEPOSITS
      BY CHECK ..........................................................................................................9

      A.  Seller Waived Their Right to Any Monies Other than What
          was Stated on the Final HUD Closing Statement. ..............................10

      B.  Seller Had No Authority to Consult with NE Apartments in the Decision-
          Making Regarding the Contract Between Seller and Appellant. ..................12

      C.  There Was No Requirement that the Additional Deposits Were to be in
          Immediately Available Funds. ......................................................................13

Conclusion .........................................................................................................15

Certificate of Service ........................................................................................16

Certificate of Compliance ..................................................................................16

After extensive briefing and oral argument, the Second District Court of Appeal entered a *per curiam affirmed* order on September 25, 2015. Nestor requested an *en banc* rehearing, and a written opinion, all to no avail. Amber Robinson, Nestor's counsel in the case *sub judice*, even tried unsuccessfully in late December 2015 to have the Florida Supreme Court review the matter. Jud. Not. 35. The Second District entered its mandate on December 30, 2015 (Jud. Not. 34), thereby rendering finality to all issues related to the Nestor contract, the July 15, 2014 failed real estate closing, the enforcement of the Settlement Agreement and the September 4, 2014 hearing.

## ARGUMENT

**II.    This Court Lacks Subject Matter Jurisdiction Pursuant to *Rooker-Feldman* Doctrine, Lack of Diversity Jurisdiction and Supplemental Jurisdiction.**

> **A.    Lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine.**

Plaintiff's unjust enrichment claim is barred by the *Rooker-Feldman* doctrine, which prevents federal district courts from acting as appellate courts over final state court decisions.   *VanDecruze v. Nationstar Mortgage LLC*, No. 8:18-cv-1027-T-36MAP, 2018 WL 3391348, at *3 (M.D. Fla. May 16, 2018).  The doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.*  (citing *Green v. Jefferson Cty. Comm'n*, 563 F.3d 1243, 1249 (11th Cir. 2009));  *Kowallek v. Relation Ins. Servs. of Fla., Inc.*, 762 Fed. App'x 976, 978 (11th Cir. 2019).  Where, as here, a party "challenges the state court decision itself—and not the statute or law which underlies that decision— . . . [he] falls within the doctrine because . . . [he] complains of injuries caused by state court judgments and invites . . . review and rejection of those judgments." *VanDecruze*, 2018 WL 3391348 at *3.

To determine if the *Rooker-Feldman* doctrine applies, courts consider "whether the claim 'was either (1) one actually adjudicated by a state court or (2) one inextricably intertwined with a state court judgment.'"  *Kowallek*, 762 Fed.

App'x at 978 (citations omitted).  "A claim is inextricably intertwined 'if it asks to effectively nullify the state court judgment, or it succeeds only to the extent that the state court wrongly decided the issues.'"  *Id.*

Here, Plaintiff requests that this Court review the state court proceedings to find that Judge Day's order was erroneous and as a result VPC3 and N. E. Apartments were unjustly enriched.  The *Rooker-Feldman* doctrine expressly prohibits this precise situation.  Here, we have a state-court loser complaining of lost money and real estate resulting from the state court order enforcing the Settlement Agreement.  Plaintiff requests that this Court review and reject the state court order.  Both considerations enumerated in *Kowallek* are satisfied: (1) the issue of Nestor's breach resulting in his losing the right to acquire the Property was adjudicated by the state court; and (2) Plaintiff's unjust enrichment claim is inextricably intertwined with the state court proceeding because if this Court finds the Defendants were unjustly enriched, that would mean that this Court determined that Plaintiff did not breach the Nestor contract or Settlement Agreement and that Nestor was entitled to become the owner of the Property, a direct contradiction of the ruling made by the state court.  The state court ruled that Nestor breached the Settlement Agreement, that he had no more right to acquire the Property, and that N. E. Apartments was entitled to purchase the Property.  Likewise, all rights regarding the Nestor contract were before the state court, and Nestor was not awarded any right to obtain payment of any deposits

that were clearly non-refundable under the Nestor contract.   Therefore, the *Rooker-Feldman* doctrine bars this Court's review of the state court judgment.

> **B.   This Court lacks diversity and federal question subject matter jurisdiction over Plaintiff's unjust enrichment claim.**

Further, this Court does not have diversity or federal question subject matter jurisdiction over Plaintiff's claim for unjust enrichment.   28 U.S.C. § 1331; 28 U.S.C. § 1332.   Diversity jurisdiction requires a diversity of citizenship among all parties and an amount in controversy over $75,000.   *Duo-Regen Technologies, LLC v. 4463251 Canada Inc.*, No. 8:13-cv-2108-T-27TBM, 2014 WL 1338117, at *1 (M.D. Fla. Apr. 2, 2014) (citations omitted).   Federal question jurisdiction exists where the plaintiff's claims rely upon federal law.   *Id.* at *2.

Here, there is clearly no diversity of citizenship between the parties because Plaintiff is a resident of Pinellas County, Florida.   Doc. 12, ¶ 5.  Defendant Judge Jack Day is a circuit court judge for the Sixth Judicial Circuit of the State of Florida (Doc. 12, ¶ 9), Defendant VPC3 is a Florida limited liability partnership, and Defendant N. E. Apartments is a Florida corporation.   Doc. 12, ¶¶ 5–9.   Furthermore, Plaintiff's claim for unjust enrichment is a state law claim and presents no federal question.   *Cerny v. Boulevard Del, Inc.*, No. 6:18-cv-1808-Orl-22TBS, 2019 WL 5291208, at *7 (M.D. Fla. 2019).   Therefore, this Court lacks subject matter jurisdiction under diversity of citizenship or federal question jurisdiction for Plaintiff's unjust enrichment claim.

**C.   This Court does not have supplemental jurisdiction over Plaintiff's unjust enrichment claim and even if it did, this Court should not exercise its discretion to hear the unjust enrichment claim.**

To invoke supplemental jurisdiction, the court must have original jurisdiction over at least one claim in the action. *Duo-Regen Technologies*, 2014 WL 1338117 at \*2.   Under 28 U.S.C. § 1367(c), supplemental jurisdiction can attach provided the state claim is "so related to claims in the action within the original jurisdiction that . . . it form[s] part of the same case or controversy under Article III of the United States Constitution." *Id.*   And even if supplemental jurisdiction were available, a federal court may decline to exercise such jurisdiction. *Gonzalez v. Batmasian*, 239 F. Supp. 3d 1363, 1365-66 (S.D. Fla. 2017).

**1.   *No supplemental jurisdiction over the unjust enrichment claim.***

For the Court to have supplemental jurisdiction, the state law claim must arise from the same case or controversy, which has been interpreted by courts to mean "out of a common nucleus of operative of fact with a substantial federal claim." *Buckles v. Focus on Innovation, Inc.*, No. 6:13-cv-1198-Orl-36TBS, 2014 WL 982841, at \*3 (M.D. Fla. 2014) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724–25 (1966)).   To determine if the case arose out of a common nucleus of operative fact, courts look to "whether the claims arise from the same facts, or involve similar occurrences, witnesses or evidence." *Buckles*, 2014 WL 982841 at \*3 (quoting *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 455

(11th Cir. 1996)).   Courts also evaluate the elements for each claim, and if the elements require different facts and evidence, courts have declined supplemental jurisdiction.   *See Lee v. Winter Haven Cardiology, P.A.*, No. 8:15-cv-535-T-17MAP, 2015 WL 12830475, at *1–2 (M.D. Fla. 2015) (declining supplemental jurisdiction over defendant's state law claims for breach of contract, fraud and conversion because they were not "so related" to plaintiff's Fair Labor Standards Act claim).

This Court in *Buckles* declined supplemental jurisdiction because state law claims, including a claim for unjust enrichment, involved different facts and occurrences and required different evidence than the federal claims.   *Buckles*, 2014 WL 982841 at *3.   Similarly, in *Lee*, this Court determined that the elements of proof for several state and federal claims were so different that it was insufficient to establish a common nucleus of operative fact.   2015 WL 12830475 at *2.

Plaintiff's unjust enrichment claim requires different facts and evidence than the federal claims.   Plaintiff's Amended Complaint asserts five counts: (I) due process right to a hearing; (II) Fourteenth Amendment right to an impartial trial;[5] (III) unjust enrichment;[6] (IV) Fifth Amendment due process violation;[7]

---

[5] In Plaintiff's federal claim in Count II, Plaintiff must establish that he did not receive an impartial trial.   "Impartial" is defined as "[n]ot favoring one side more than another; unbiased and disinterested; unswayed by personal interest."   Black's Law Dictionary (11th ed. 2019).   Thus, Plaintiff must prove that his trial was not adjudicated by an unbiased or disinterested tribunal.

and (V)[8] a claim under Title II of the Americans with Disabilities Act ("ADA").[9] Plaintiff's federal claims are in Counts I, II, IV, and V.

The elements and proof for Plaintiff's unjust enrichment claim are significantly different from Plaintiff's federal claims. Unjust enrichment requires this Court to evaluate the underlying facts leading up to the state court proceeding before Judge Day on September 4, 2014, or some equitable basis that would be different from the adjudication of the express contract rights arising under the Nestor contract or Settlement Agreement. This Court will need to evaluate the Settlement Agreement, the Nestor contract, and other contracts between Plaintiff and Defendants VPC3 and N. E. Apartments. Unlike Plaintiff's unjust enrichment claim, Plaintiff's federal claims involve constitutional or civil

---

[6] Plaintiff must demonstrate that: "(1) plaintiff has conferred a benefit on defendant; (2) defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for defendant to retain it without paying the value thereof." *OJ Commerce, LLC v. Ashley Furniture Indus., Inc.*, 817 Fed. App'x 686, 692 (11th Cir. 2020).

[7] To state a due process violation in Counts I and IV, Plaintiff must prove he was deprived of a protected liberty or property interest, and if he were deprived, then the court must determine if the plaintiff received sufficient process; "sufficient process" means "an opportunity to be heard at a meaningful time in a meaningful way." *Sharma v. Drug Enforcement Agency*, 511 Fed. App'x 898, 901–02 (11th Cir. 2013).

[8] Plaintiff mistakenly listed his claim under the Americans with Disabilities Act as Count VI, not Count V, in the Amended Complaint.

[9] To state a claim under Title II of the ADA in Count V, Plaintiff must prove: "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefit of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Silberman v. Miami Dade Transit,* 927 F.3d 1123, 1134 (11th Cir. 2019) (citations omitted).

rights issues, which require evaluating whether Judge Day provided an impartial hearing and whether Judge Day discriminated against Plaintiff due to Plaintiff's unalleged disability.  Because Plaintiff's federal and state law claims involve different facts, different occurrences, and require different evidence, this Court clearly does not have supplemental jurisdiction.

### 2.   *If this Court does have supplemental jurisdiction, it should decline exercising such jurisdiction.*

Moreover, even if this Court has supplemental jurisdiction, this Court has discretion to decline jurisdiction over Plaintiff's unjust enrichment claim.  Under 28 U.S.C. § 1367(c), there are four bases for district courts to decline exercising supplemental jurisdiction.  These bases include:

1) the claim raises a novel or complex issue of State law,
2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
3) the district court has dismissed all claims over which it has original jurisdiction, or
4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c)(1)–(4).  Only one of these factors must be satisfied to decline jurisdiction.  *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006).

If Defendant Judge Day's Motion to Dismiss is granted, then this Court should exercise its discretion and decline to exercise supplemental jurisdiction, as all "original jurisdiction" claims would no longer be pending.   28 U.S.C. § 1367(c)(3).  The Eleventh Circuit encourages district courts to dismiss state

claims where all federal claims have been dismissed. *Carson v. Ocwen Loan Serv., LLC*, No. 2:18-cv-447-FtM-99CM, 2018 WL 4354815, at *2 (M.D. Fla. Sept. 12, 2018) (citing *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004)). If all of Plaintiff's federal claims were dismissed, this Court should similarly dismiss the unjust enrichment claim.

Further, the Court may decline supplement jurisdiction if "exception circumstances" exist: "the values of judicial economy, convenience, fairness, and comity." *Gonzalez*, 239 F. Supp. 3d at 1365-66 (quoting *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 173 (1997)). Federal courts have declined to exercise supplemental jurisdiction where the state and federal claims involve different facts, elements of proof, evidence, and witnesses, because that would not serve judicial economy. *Gonzalez*, 239 F. Supp. 3d at 1366; *Morales v. Aldie's Certified Auto Body & Mechanical, Inc.*, No. 6:07-cv-1470-Orl-22GJK, 2008 WL 782497, at *1 (M.D. Fla. Mar. 20, 2008). As discussed above, the elements of proof for the federal claims are drastically different from an unjust enrichment claim. Therefore, judicial economy will not be furthered by this Court exercising supplemental jurisdiction over Plaintiff's unjust enrichment claim.

## III.   <u>**Count III Is Barred under the Doctrine of Res Judicata**</u>.

Res judicata prohibits "the filing of claims which were raised or could have been raised in an earlier proceeding." *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1271 (11th Cir. 2002). Here, Plaintiff's unjust enrichment claim could have been raised, but was not, in the state court proceeding. Thus, Plaintiff's claim is

barred by res judicata.  Without question, res judicata may be raised in a motion to dismiss.  *Austin v. Progressive RSC, Inc.*, No. 8:07-cv-01412-T-24-EAJ, 2008 WL 11445445, at *2 (M.D. Fla. Mar. 19, 2008).  Moreover, Count III is barred under the doctrine of res judicata because Plaintiff's claims were or could have been raised in the state court proceeding.

### A.    Res judicata may be raised in a motion to dismiss.

Res judicata may be raised in a motion to dismiss where, as here, the defense clearly appears from the face of the Amended Complaint.  *Austin v. Progressive RSC, Inc.*, 2008 WL 11445445, at *2 (citing *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984).  If the complaint clearly demonstrates that an affirmative defense is applicable, it "is essentially self-defeating, and a Rule 12(b)(6) dismissal is therefore proper."  *Austin*, 2008 WL 11445445 at *2; *Collier County v. Holiday CVS, LLC*, No. 2:17-cv-14-FtM-38CM, 2017 WL 1318459 (M.D. Fla. Apr. 10, 2017) (dismissing an unjust enrichment claim under the doctrine of res judicata).

### B.    Res judicata bars Plaintiff's unjust enrichment claim.

In effect, Plaintiff seeks to undo or challenge the final state court order in his Amended Complaint, despite appealing the state court order to the Second District Court of Appeal.  To invoke res judicata under Florida law, the new case must be identical to the prior case in the following respects: "(1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the quality of the persons for or against whom the claim is made."

*Symonette v. Aurora Loan Servs., LLC*, 631 Fed. App'x 776, 778 (11th Cir. 2015) (applying the doctrine of res judicata to affirm a federal district court order granting defendant's motion to dismiss for several claims, including unjust enrichment).[10]

Here, all four elements are clearly satisfied. First, "the identity of the thing sued for" is the same in the state and federal proceedings because both cases revolve around the same rights under the Nestor contract, Settlement Agreement and Property. Second, the "identity of the cause of action" in the federal Amended Complaint arises out of the same nucleus of operative fact as the state case because both cases rely upon the facts regarding deposits made under the Nestor contract, Nestor's breach of the Settlement Agreement, VPC3 retaining Plaintiff's deposits, and VPC3's transfer of title to N. E. Apartments. Plaintiff challenged all of these issues in the state proceedings, and similarly challenges them before this Court now. Third, the parties in the original action are also parties to this action. Fourth, the parties in this case have the same interest in, and same capacity as, the state court proceedings. Plaintiff entered into a Settlement Agreement with both VPC3 and N. E. Apartments, and all three parties, in an identical capacity as this case, were subject to state court litigation over the same facts as those before this Court.

---

[10] "Importantly, the doctrine of res judicata not only bars issues that were raised, but it also precludes consideration of issues that could have been raised but were not raised in the first case." *Ladd v. City of West Palm Beach*, No. 14-80662-CIV-DIMITROULEAS/SNOW, 2015 WL 13310402, at *2 (S.D. Fla. Aug. 6, 2015) (quoting *Fla. Dep't of Transp. v. Juliano*, 801 So. 2d 101, 105 (Fla. 2001)).

The briefs filed in the Second District Court of Appeal exhaustively addresses all of the factual issues raised by Nestor in the Amended Complaint, including the appropriateness of Judge Day conducting an evidentiary hearing.

Below is a comparison of Plaintiff's allegations in the Amended Complaint with the issues which were adjudicated with finality in state court:

| Comparison of Allegations in the Federal Second Amended Complaint to Issues Adjudicated in State Court | | | | |
|---|---|---|---|---|
| | Federal Second Amended Complaint | Appellant's Initial Brief | Appellee's Answer Brief | Appellant's Reply Brief |
| **Failure to timely pay immediately negotiable funds** | ¶¶ 47, 63 | pp. 10, 23–24, 33–43 | pp. 1–2, 4–5 , 13–14, 19–21, 23–24, 40–47 | pp. 9–12, 13–15 |
| **HUD-1 closing statements** | ¶¶ 64, 67, 70, 71, 73, 75 | pp. 6, 7, 9, 10, 12, 33–43 | pp. 7–13, 14–15, 18–19 | pp. 9–11 |
| **Deposits** | ¶¶ 20, 26, 28, 94 | pp. 2, 4, 7, 9 | pp. 2, 3, 7–8, 10, 18, 20, 23, 41 | pp. 2, 12, 13–15 |
| **Assignment of Nestor contract** | ¶¶ 10, 15, 19, 36, 37, 38, 39, 40, 41, 43, 44, 53, 54, 57, 59, 60, 61, 62 | pp. 8, 9, 28–32 | pp. 6–7, 15–18, 19, 35–40 | pp. 5–7 |
| **Failure to timely pay immediately negotiable funds** | ¶¶ 47, 63 | pp. 10, 23–24, 33–43 | pp. 1–2, 4–5 , 13–14, 19–21, 23–24, 40–47 | pp. 9–12, 13–15 |
| **VPC3 sale of Property to N. E. Apartments** | ¶¶ 89, 90, 91, 92 | pp. 5–6 | pp. 5–6, 46–47 | |

Therefore, Plaintiff's unjust enrichment claim is undisputedly barred by res judicata.

**IV.** **This Court Should Dismiss Count III for Failure to State a Claim of Unjust Enrichment Because this Count is Barred by the Four-Year Statute of Limitations and Because of the Existence of an Express Contract.**

      **A.** **Plaintiff's unjust enrichment claim is barred by the four-year statute of limitations.**

In Florida, the statute of limitations for unjust enrichment claims is four years. *Bedtown Group II, LLC v. Ungerleider*, 684 Fed. App'x 839, 841 (11th Cir. 2017) (citing section 95.11(3), Florida Statutes). The statute of limitations begins to run "from the time the cause of action accrues." *Bedtown Group*, 684 Fed. App'x at 841 (quoting section 95.031, Florida Statutes). And Florida law provides that "an action for unjust enrichment accrues when the benefit is conferred." *Wiand v. Dewane*, No. 8:10-cv-246-T-17MAP, 2011 WL 4460095 (M.D. Fla. July 11, 2011), *order adopting Report and Recommendation*, 2011 WL 4459811 (M.D. Fla. Sept. 26, 2011).

Plaintiff alleges that, to the extent the "Purchase Contract or Settlement Agreement . . . are deemed void, invalid or otherwise unenforceable . . . , Plaintiff has conferred a benefit on Defendants." Doc. 12, ¶ 163. Plaintiff also alleges that N. E. Apartments voluntarily accepted and retained the benefit conferred. Doc. 12, ¶ 165. Presumably, this is due to Plaintiff's breach of the Settlement Agreement on July 15, 2014, which resulted in VPC3 keeping Plaintiff's deposits and selling the Property to N. E. Apartments pursuant to the backup contract in

accordance with the Settlement Agreement.  Doc. 12, ¶¶ 32, 89.  Plaintiff alleges he was further harmed when N. E. Apartments obtained title to the Property on November 12, 2014.  Doc. 12, ¶¶ 89, 169.

Although Defendants adamantly refute that any benefit was conferred by Plaintiff, if a benefit was conferred, the statute of limitations likely began to run on July 15, 2014.  On this date, Plaintiff breached the Settlement Agreement, which allowed VPC3 to retain Plaintiff's deposits and required VPC3 to sell the Property to Defendant N. E. Apartments pursuant to the Backup Contract contemplated in the Settlement Agreement.  However, even if Plaintiff argues that the benefit was conferred to N. E. Apartments when it took title to the Property, which was no later than November 12, 2014, then Plaintiff's claim is still barred.  Plaintiff filed his Complaint in this Court on February 3, 2020, well after the four-year statute of limitations expired.  Consequently, Plaintiff's claim for unjust enrichment is time barred.

## B.   An express contract bars Plaintiff's claim for unjust enrichment.

Plaintiff's claim for unjust enrichment is barred because Plaintiff alleges in the same count for unjust enrichment that VPC3 and N. E. Apartments entered into an express contract with Plaintiff.  The existence of an express contract bars an unjust enrichment claim.  *Mario v. Centex Homes*, No. 8:06-cv-131-T-23, 2006 WL 560150, at *1 (M.D. Fla. Mar. 7, 2006) (dismissing a claim for unjust enrichment because of the existence of an express agreement governing the

22

subject matter of the unjust enrichment claim).  Further, there is no allegation to support any theory to void the Nestor contract or Settlement Agreement.

Here, Plaintiff alleges that he entered into a Settlement Agreement with VPC3 and N. E. Apartments governing the purchase and sale of the Property, which allegation was incorporated into Count III.  Doc. 12, ¶¶ 30–33, 162. Plaintiff further alleges that Plaintiff "fully performed" under the Nestor contract and Settlement Agreement.  *Id.* ¶ 164.  A claim for unjust enrichment fails where, in the same count, Plaintiff acknowledges an express contract exists.  *D.H.G. Properties LLC v. The Ginn Cos., LLC*, No. 3:09-cv-735-J-34JRK, 2010 WL 5584464, at *8 (M.D. Fla. Sept. 28, 2010) (unjust enrichment claim dismissed because of existence of express contract).   Because Plaintiff acknowledges the existence of an express contract in the same count for unjust enrichment, Plaintiff's claim for unjust enrichment fails and must be dismissed.

## V.   Defendants VPC3 and N. E. Apartments Are Entitled to Attorneys' Fees under the Settlement Agreement.

If this Court dismisses Plaintiff's Amended Complaint, then this Court must award VPC3 and N. E. Apartments' attorneys' fees under the "Enforcement of Agreement" provision in the Settlement Agreement.  This provision provides:

> Nothing contained herein and, specifically, nothing contained in the releases in Paragraph 2 shall limit or affect in any way the Parties' rights to enforce the terms of this Settlement Agreement by appropriate legal means. In the event of the bringing of any action or suit by a Party hereto against another Party hereto **by reason of any breach of any of the covenants or agreements on the part of the other party in this Settlement Agreement**, then in that event, the prevailing party in such action or dispute shall be

> ***entitled to*** have and recover of and from the other Party all costs
> and expenses of suit, including ***actual attorneys' fees***.

Exhibit "C" (emphasis added).   In Florida, contractual provisions awarding attorneys' fees to prevailing parties are strictly enforced.  *Dolphin LLC v. WCI Communities, Inc.*, No. 07-80241-CIV, 2008 WL 2477665, at *3 (S.D. Fla. June 18, 2008) (citing *Lafhkijani v. Lafhkijani*, 911 So. 2d 1154 (Fla. 2005)).

Plaintiff seeks to affirm and enforce the Settlement Agreement because he alleges the Defendants breached the Settlement Agreement.  Doc. 12, ¶¶ 83, 162, 164; s*ee also* Doc. 12, p. 24 ("In the alternative enter a declaratory judgment for Plaintiff . . . thus ***enforcing agreements*** made between the Plaintiff and Defendant Seller.") (emphasis added). Because Plaintiff sued VPC3 and N. E. Apartments based on an alleged breach of the Settlement Agreement, which allegedly unjustly enriched Defendants, Defendants are entitled to their attorneys' fees as prevailing party pursuant to the parties' Settlement Agreement. If this Court dismisses Plaintiff's Amended Complaint, then Defendants VPC3 and N. E. Apartments are the prevailing parties and should be awarded their attorneys' fees.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant Defendants VPC3 and N. E. Apartments' Motion to Dismiss Plaintiff's [Second] Amended Complaint.

## LOCAL RULE 3.01(g) CERTIFICATION

I hereby certify that counsel for the movants has attempted to confer with counsel for Plaintiff regarding the relief sought in this motion.   Counsel for Plaintiff indicated that they are not available to confer until February 25, 2021. Thus, movants will supplement this certification in accordance with Local Rule 3.01(g).

Dated: February 24, 2021.

Respectfully submitted,

/s/ Alice R. Huneycutt
Alice R. Huneycutt
ALICE R. HUNEYCUTT, ESQUIRE
Florida Bar No. 293105
LEAD COUNSEL
Primary: ahuneycutt@stearnsweaver.com
Secondary: dclarke-argo@stearnsweaver.com
STEARNS WEAVER MILLER WEISSLER
  ALHADEFF & SITTERSON, P.A.
401 E. Jackson St., Suite 2100, Tampa (33602)
Post Office Box 3299
Tampa, Florida  33601
Telephone:  (813) 223-4800
Facsimile: (813) 222-5089
Attorneys for Defendants,
VPC3 II, LLP and
N. E. Apartments Associates, Inc.

## CERTIFICATE OF SERVICE

I certify that on February 24, 2021, I filed the foregoing with the Clerk of Court via CM/ECF which will serve a true and correct copy upon all counsel of record.

/s/ Alice R. Huneycutt
Alice R. Huneycutt

25