UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THOMAS NESTOR,
Plaintiff,

V.

VPC3 II, LLP, N. E. APARTMENTS
ASSOCIATES, INC. and JUDGE
JACK DAY, in his official capacity,
Defendants.

Case No. 8:20-cv-00265-T-36TGW

_____/

**PLAINTIFF'S OPPOSITION TO DEFENDANT JUDGE JACK DAY'S MOTION TO DISMISS [SECOND] AMENDED COMPLAINT (DOC. 12) AND MEMORANDUM OF LAW**

Plaintiff, Thomas Nestor, through undersigned counsel, files this Opposition to Defendant Judge Jack Day's Motion to Dismiss the Second Amended Complaint (Doc. 12), stating as follows:

Plaintiff denies that his claims lack subject matter jurisdiction or that relief cannot be granted. Plaintiff also opposes Defendant Judge Day's position that should the Court grant their motion to dismiss, it warrants dismissal with prejudice.

<u>**MEMORANDUM OF LAW**</u>

**I. Facts and Procedural Background**

The Plaintiff, through undersigned counsel, admittedly made a clerical error in titling the Complaint, Amended Complaint, rather the Second Amended Complaint. In addition, it was an

1

oversight to list Count V as Count VI. However, Plaintiff has amended the Complaint in compliance with the Court Order to Show Cause so that it is not a shotgun pleading, contrary to the Defendant Judge Day's stated facts.

## II. Legal Standards Under Rules 12 (b) (1) and 12(b)(6)
### III. Argument

**A.    The Second Amended Complaint Does Not Lack of Subject-Matter Jurisdiction.**

**i.    The Court Possesses Subject-Matter Jurisdiction pursuant to the Rooker-Feldman doctrine.**

Defendant cites to the Rooker-Feldman doctrine as if it were absolute bar preventing this Court from having subject matter jurisdiction simply because the Defendant is a judge, and Plaintiff's harm occurred and continued to occur during State Court proceedings. In both *Rooker* and *Feldman*, the plaintiffs challenged the validity of state court decision by filing suit in federal district court. In *Rooker*, the plaintiff asked the district court to render the state court judgment against him "null and void." In *Feldman*, the plaintiffs filed suit against the actual state court that had rejected the plaintiffs' applications to practice law. In both cases, the Supreme Court dismissed the suits for lack of subject-matter jurisdiction, reasoning that pursuant to 28 U.S.C. § 1257, only the Supreme Court, and not the lower federal courts, enjoys appellate jurisdiction over state court decisions.

However, in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, The Supreme Court recognized that the Rooker-Feldman doctrine is a narrow jurisdictional bar to litigation where the losing party "repairs to federal court to undo the [state court] judgment in its favor." The Supreme Court cautioned that "Rooker-Feldman does not otherwise override or supplant

2

preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions." The Supreme Court noted that, "[i]f a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion."An important factor in *Exxon Mobil* is that the plaintiff was not seeking to overturn the state court.

Notably, in  Philadelphia. *Entm't & Dev. Partners LP v. Commonwealth of Pa. Dept. of Rev.* (In re Phila. Entm't & Dev. Partners LP), 879 F.3d 492 (3d Cir. 2018), theThe Third Circuit adopted a test for the application of the doctrine and  noted that the it applies when four requirements are met: (1) the federal plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) that judgment issued before the federal suit was filed, and (4) the plaintiff invites the district court to review and reject the state court judgment. The Third Circuit found that the fourth requirement was not met. Relying on Exxon Mobile, the Third Circuit ruled that so long as federal court litigation does not concern "the bona fides of the prior judgment," the federal court "is not conducting appellate review, regardless of whether compliance with the second judgment would make it impossible to comply with the first judgment."

Similarly, in the instant case,  Plaintiff is not seeking to overturn the judgment from the State Court, but rather wishes that this Court addresses the denial of his Constitutional rights and adherence to the proper procedures, regardless of the outcome. Further, the ADA Title II cause of action is an "independent claim" under *Exxon*, and would not be a form of review of any State Court judgment. Contrary to Defendant's assertion, Plaintiff is not simply complaining of an

3

unfavorable judgment. The denial of the reasonable ADA accommodations by Defendant Judge Day violated Plaintiff's rights and caused him harm long before the case reached its conclusion.

**B. The Second Amended Complaint States a Claim Upon Which Relief Can Be Granted.**

**i. The Second Amended Complaint is a proper pleading.**

Defendant Judge Day, through his counsel, argues that Plaintiff's Second Amended Complaint is a shotgun pleading even after amendment, and that the claims were not articulated with enough clarity for Defendants to respond. Defendant Judge Day's go so far as to claim that the SAC is virtually identical to the previous version. While admittedly, Plaintiff's Counsel did not alter the title of "Amended Complaint" or the title of Count VI for ADA claim, substantive changes were made in the form of allocating previously stated paragraphs to specific counts for reference. There are three defendants and the complaint is 147 paragraphs. Five counts are made. The SAC clearly identifies the due process violations and ADA violation that Plaintiff reasonably believes he experienced. He identified that he was denied a reasonable accommodation for his disability in the hearing before Defendant Judge Day and that he was denied an evidentiary hearing in conjunction with his opportunity to be heard/

In the Eleventh Circuit, courts have identified roughly four categories of shotgun pleadings: (1) a pleading with multiple counts where each count adopts the allegations of all preceding counts; (2) a pleading that relies on conclusory and vague allegations not tied to any cause of action; (3) a pleading that fails to separate out its various causes of action and claims for relief; and (4) a pleading that asserts numerous claims against multiple defendants without specifying which defendants are responsible for which acts or omissions. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). By their very nature, shotgun

pleadings violate Rule 8's mandate to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8.

In *Vibe Micro, Inc. v. Shabanets*, 2018 WL 268849 (11th Cir. Jan. 3, 2018), the court found Edward Mandel's Complaint to be a shotgun pleading. Edward Mandel sued various parties alleging he was the victim of a scheme to force him off the board of a bill-payment terminal company. Mr. Mandel's complaint asserted both federal and state law claims, spanned 49 pages, and included an additional 109 pages of exhibits. Shortly after filing, Mr. Mandel amended his complaint, adding more allegations and exhibits. On motions to dismiss by the various defendants, the district court (S.D. Fla.) found the amended complaint to be a shotgun pleading that was "a mostly incoherent document" riddled with allegations "oftentimes not connected to a particular Defendant or set of Defendants, making it impossible to understand who did what." Although Mr. Mandel did not request the opportunity to amend his pleading, the district court *sua sponte* granted him the opportunity to do so, providing specific guidance as to how to remedy the deficiencies in the amended complaint. Mr. Mandel then filed a second amended complaint, which "ballooned to 70 pages, with 160 pages of exhibits." The district court, finding the second amended complaint was plagued by the same issues underlying the first amended complaint, dismissed the case with prejudice for violating Rule 8's requirement to provide "a short and plain statement of the claim." Mr. Mandel did not request—and the district court did not offer—the opportunity to file another amended pleading.[1]

Plaintiff's SAC is more succinct and each allegation directly correlates with one of the three defendants. It satisfies the requirement for a clear and plain statement.

**ii. Plaintiff's claims against Judge Day are not barred by the statute of limitations.**

---

[1] *See Dressler v. United States Department of Education*, No. 2:18-cv-311, 2019 U.S. Dist. LEXIS 55451 (M.D. Fla. April 1, 2019) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Ofc.*, 792 F.3d 1313, 1322-23 (11th Cir. 2015)).

5

This action is not barred by the statute of limitations on the basis of equitable tolling doctrine. Plaintiff was unaware of the constitutional rights violation that made up the cause of action that was created September 4, 2014 and would have lapsed on that same date in 2018 due to excusable neglect and his pursuit of these rights in conjunction with the appeal of the underlying real estate property dispute in albeit the wrong forum. Plaintiff did litigate the underlying case since September 2014, proceeding first with the Second District Court of Appeal and advancing the claim to the Florida Supreme Court. Without a per curiam opinion as he requested from the Second District Court of Appeal, the Florida Supreme Court would not hear the case. A Master Order of Dismissal was entered in the state court proceeding on March 9, 2017. The Plaintiff went on to file an action against the Title Company on July 14, 2016 in Pinellas County, Florida, Case No. 16-004627-CI, for the error on the closing documents that contributed to the Seller breaching the agreement with Plaintiff. This case is now up on appeal with a notice of appeal filed by Plaintiff's Counsel in that matter on February 11, 2020.

Plaintiff has also filed a case against Nick Ekonomou, the owner of the Intervenor in the Settlement Agreement at issue in the September 2014 case. On July 13 2018, Plaintiff sued Nicholas Ekonomou, NE Apartments Associates, Inc., and Florida Fair Housing, Corp., in Pinellas County, Case No. 18-004648-CI for improperly using his role as Intervenor in the Settlement Agreement entered during the proceedings of Case No. 14-002358-CI to tortiously interfere with Plaintiff's contractual relationship with VCP3 II LLP. This litigation is ongoing. Plaintiff also began litigating in a related action for the property against C3 Healthcare Management, Inc., Northstar Real Estate Development Corp., and VPC3 II LLP in Pinellas County, Florida, Case No. 19-004849-CI, for fraudulent conveyance of the real estate property.

Plaintiff has thus demonstrated to the Defendants his desire to address each aspect of the real property transaction that did not proceed as planned pre-litigation and once it was in the Court's hands. No party would thus be surprised by an action initiated by the Plaintiff against them for relief in a manner that would run afoul of the policy concerns underlying the statute of limitations.

Generally, tolling of a limitations period is governed by state law and to duly consider the applicable Florida federal decisions that have addressed the Florida tolling statute, it should initially be observed that federal courts situated in Florida, when deciding issues of state law as opposed to issues of federal law, "must follow the decisions of the Florida Supreme Court and Florida's intermediate appellate courts."[2]

The Florida Supreme Court has created an exception on the grounds of equitable tolling in *Machules v. Dep't of Admin*. , 523 So. 2d 1132 (Fla. 1988)[3], although it has also rendered decisions to the contrary.[4] In *Machules*, the Florida Supreme Court applied equitable tolling in a case concerning the limitation period for filing an administrative appeal of a public employee's discharge. In that case, the court held that since the employee had incorrectly filed a grievance instead of an administrative appeal, and since the employer had participated and set the grievance hearing on a date after the end of the statute of limitations period, the doctrine of equitable tolling tolled the limitation period:

---

[2] *See Cohen v. World Omni Fin. Corp*. , 751 F. Supp. 2d 1289, 1293 (S.D. Fla. 2010) ("Tolling of a limitations period is governed by state law."); *Prime Ins. Syndicate, Inc. v. Sail Tech Distribs., Inc.*, 270 F. App'x 962, 964 (11th Cir. 2008) ("Instead, because we are required to apply state law, we must follow the decisions of the Florida Supreme Court and Florida's intermediate appellate courts."); H. Michael Munez, *Tolling or Suspending the Florida Statutes of Limitations Pursuant to Applicable Law*, 92 Fla. B.J., Apr. 2018, at 25.

[3] Fla. Stat. §95.051(2), provides that "[a] disability or other reason does not toll the running of any statute of limitations except those specified in this section, s. 95.091, the Florida Probate Code, or the Florida Guardianship Law."

[4] *Hearndon v. Graham*, 767 So. 2d 1179, 1185 (Fla. 2000) ("[T]he tolling statute specifically precludes application of any tolling provision not specifically provided therein."); *Totura & Co. v. Williams*, 754 So. 2d 671, 673 (Fla. 2000) ("Because the legislature has expressly provided for the instances that shall toll the running of any statute of limitations and has excluded any other reason, we are not free to create an exception to that determination."); *Florida Dep't of Health & Rehab. Servs. v. S.A.P.*, 835 So. 2d 1091, 1096 n.7 (Fla. 2002) ("Fla. Stat. Ch. 95.051 (1995) sets forth an exclusive list of conditions that can 'toll' the running of the statute of limitations; Ch. 95.051 states that no other condition can toll the statute of limitations. The list did not mention equitable estoppel.").

7

> The doctrine of equitable tolling was developed to permit under certain circumstances the filing of a lawsuit that otherwise would be barred by a limitations period. The tolling doctrine is used in the interests of justice to accommodate both a defendant's right not to be called upon to defend a stale claim and a plaintiff's right to assert a meritorious claim when equitable circumstances have prevented a timely filing. Equitable tolling is a type of equitable modification which "'focuses on the plaintiff's excusable ignorance of the limitations period and on [the] lack of prejudice to the defendant.'" Contrary to the analysis of the majority below, equitable tolling, unlike estoppel, does not require active deception or employer misconduct, but focuses rather on the employee with a reasonably prudent regard for his rights. As Judge Zehmer notes in his dissent below: The doctrine [of equitable tolling] serves to ameliorate harsh results that sometimes flow from a strict, literalistic construction and application of administrative time limits contained in statutes and rules.[5]

Florida federal courts have also applied the doctrine of equitable estoppel: in *Rowland v. Conyers*, 2013 LEXIS 26356, No. 4:10cv64 (N.D. Fla. Feb. 26, 2013), a Florida federal court rendered the following decision on the tolling attributes of a Florida equitable doctrine directly contrary to §95.051(2):

A Florida statute lists circumstances that toll a statute of limitations. Exhausting administrative remedies is not on the list. And by the statute's explicit terms, the list is exhaustive….There is much to be said for that approach; a statute of limitations is best when it is clear and easily applied. In the absence of contrary Florida authority, this would strongly support the position that Mr. Rowland's limitations period was not tolled [...] But there is other Florida authority. In *Machules v. Department of Admin.*, 523 So. 2d 1132 (Fla. 1988), the Florida Supreme Court held that a limitation period was equitably tolled on grounds not listed in §95.051. This puts to rest the assertion that the statute's list of tolling circumstances is exhaustive. Still, the court's language suggested that equitable tolling is available only in circumstances far different from Mr. Rowland's. The court said, "The doctrine [of equitable tolling] serves to ameliorate harsh results that sometimes flow from a strict, literalistic construction and application of administrative time limits contained in statutes and rules." The court continued, "Equitable tolling is a type of equitable modification which focuses on the plaintiff's excusable ignorance of the limitations period and on [the] lack of prejudice to the defendant." The language provides little support for Mr. Rowland, who had ample time to file this lawsuit after the administrative process ended. Indeed, Mr. Rowland announced his intention to file a lawsuit…and said he was "in the process of" doing so…nearly a year before the untolled limitations period expired. This is a weak case for equitable tolling."[6]

---

[5] *Machules*, 523 So. 2d at 1133-1134 (citing *Machules v. Dep't of Admin.*, 502 So. 2d 437, 446 (Fla. 1st DCA 1986) (Zehmer, J., dissenting) (citations omitted).
[6] *Rowland v. Conyers*, 2013 LEXIS 26356, No. 4:10cv64, at *6-8 (N.D. Fla. Feb. 26, 2013) (citations omitted).

8

Since March 31, 1988, the Florida Supreme Court *Machules* decision has been a material part of Florida's common law jurisprudence which permits the presumption that the Florida Legislature has been aware of the Machules exception to §95.051 and has not enacted legislation to change the law and overrule *Machules*.[7] In that regard, the Second District Court of Appeal has concluded: provided:

> [B]ecause the legislature has failed to make any substantive changes to the pertinent statutory language, we must assume that it has no quarrel with the judicial construction placed on these statutes in Moore. We also emphasize that until such time as the supreme court overrules Moore, or we recede from it en banc, or the Florida [L]egislature clearly expresses its disapproval of Moore by a subsequent statutory enactment, trial courts in this district are firmly bound by its holding.[8]

The three Florida federal district courts have joined with Florida state appellate courts that have also recognized the equitable tolling doctrine espoused by the Florida Supreme Court in *Machules*. In *Major League Baseball*, the Court held that "Equitable tolling, which involves no misconduct on the part of the defendant, may delay the running of the statute of limitations period based on the plaintiff's blameless ignorance and the lack of prejudice to the defendant, and in *Lupola*, the First District Court of Appeal held that "Equitable tolling is a type of equitable modification which focuses on the plaintiff's excusable ignorance of the limitations period and on the lack of prejudice to the defendant."[9] The *Gonzalez v. Florida Dep't of Fin. Servs.* Court held that generally, the tolling doctrine has been applied when the plaintiff has been

---

[7] H. Michael Munez, *Tolling or Suspending the Florida Statutes of Limitations Pursuant to Applicable Law*, 92 Fla. B.J., Apr. 2018, at 25.
[8] In *Moore v. Winter Haven Hospital*, 579 So. 2d 188 (Fla. 2d DCA), *rev. den.*, 589 So. 2d 294 (Fla. 1991), the Second District held that the four-year statute of repose in Fla. Stat. §95.11(4)(b) (1983) was tolled by the service of a notice of intent to initiate medical malpractice litigation as provided for in Fla. Stat. §768.57(4) (1987); *Wood v. Fraser*, 677 So. 2d 15, 18-19 (Fla. 2d DCA 1996) (citing *State v. Hall*, 641 So. 2d 403, 405 (Fla. 1994); *White v. Johnson*, 59 So. 2d 532, 5333 (Fla. 1952) ("[L]egislative inaction can be taken as an indication of legislature's acceptance of prior construction of statute.").
[9] *Major League Baseball*, 790 So. 2d at 1071, 1076-77 (citing *Machules v. Department of Admin.*, 523 So. 2d 1132 (Fla. 1988)); *Lupola v. Lupola*, 179 So. 3d 497, 500 (Fla. 1st DCA 2015) (citing *Machules v. Department of Admin.*, 523 So. 2d 1132 (Fla. 1988)).

misled or lulled into inaction, has in some extraordinary way been prevented from asserting his rights, or has timely asserted his rights mistakenly in the wrong forum").[10]

Plaintiff thus has timely asserted his rights in multiple forums within the four year time frame that began September 2014 though due to excusable neglect he did so in an improper forum. Case precedent supports equitable tolling of the statute to allow for these claims to move forward against the named Defendants.

### iii. Judge Day in his official capacity is a proper defendant in a § 1983 action and Plaintiff's claims are not barred by sovereign immunity.

While on its face the Eleventh Amendment bars "any suit in law or equity, commenced or prosecuted against one of the United States," the Supreme Court announced an exception to Eleventh Amendment sovereign immunity in *Ex parte Young* for claims for injunctive relief against individual state officials in their official capacities.[11] In order to fall within the Ex parte Young exception, a claim must seek prospective relief to end a continuing violation of federal law.[12] Retroactive relief is barred by the Eleventh Amendment.[13] Importantly, in *Carten v. Kent State University*, the Court held that "claims for reinstatement are prospective in nature and appropriate subjects for Ex parte Young actions."[14] The doctrine is built upon a double fiction: that for purposes of the sovereign's immunity, a suit against an official is not a suit against the government, but for the purpose of finding state action to which the Constitution applies, the official's conduct is that of the state. Indeed, *Ex parte Young* itself allowed an individual to sue a

---

[10] *See also Whiting v. Florida Dep't of Law Enforcement*, 849 So. 2d 1149, 1151 (Fla. 5th DCA 2003) ("Equitable tolling requires that the party be misled or lulled into inaction; that he was prevented from asserting his rights in some extraordinary way; or that he has timely asserted his rights in the wrong forum.") (citing *Machules* )
[11] *See* 209 U.S. 123 (1908).
[12] *See MacDonald v. Vill. of Northport, Mich., 164 F.3d 964, 970-72* (6th Cir. 1999).
[13] *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 103 (1984).
[14] 282 F.3d 391, 396 (6th Cir. 2002) (citing *Turker v. Ohio Dep't. of Rehab. & Corrs.*, 157 F.3d 453, 459 (6th Cir. 1998).

state official in his official capacity to enforce the obligations the Fourteenth Amendment imposes on a "State". While the Court in *Ex parte Young* explained its results in terms that have since been called a "fiction" (that a state official violating federal law is not acting on behalf of "the State"), courts have long recognized that the legitimacy and longevity of the doctrine is grounded in a practical construction of the Constitution's dual commands of state sovereignty and the supremacy of federal law.[15] The "fiction" remains a mainstay of our jurisprudence. It accounts for a great deal of the litigation brought by individuals to challenge the carrying out of state policies. Suits against state officers alleging that they are acting pursuant to an unconstitutional statute are the standard device by which to test the validity of state legislation in federal courts prior to enforcement, and thus, interpretation in the state courts. Similarly, suits to restrain state officials from taking certain actions in contravention of federal statutes or to compel the undertaking of affirmative obligations imposed by the Constitution or federal laws are common. In the instant case, Defendant Judge Day was named as a Defendant for his actions in his official capacity, and although these actions may be attributed to the State, such styling of a case is a well recognized procedural device for the actions to move forward without violating the 11th Amendment.

**iv. Plaintiff's claims against Judge Day are not barred by judicial immunity.**

Plaintiffs acknowledge that the Federal Courts Improvement Act 1996 (the "FCIA") amended Section 1983 to limit the availability of relief against judges, as argued by Judge Day. The limitation imposed by the FCIA applies only to injunctive relief. Declaratory relief is

---

[15] *See, e.g.*, *Pennhurst State Sch. & Hosp. v. Halderman, 4*65 U.S. 89,105 (1984); *see also Prout v. Starr,* 188 U.S. 537, 542-543 (1903).

available to Plaintiffs, regardless of the availability of injunctive relief after the enactment of the FCIA.[16]

Finally, judicial immunity applies to personal capacity claims only.[17] The Ex parte Young exception applies in this case because Plaintiff seeks relief from Judge Day in his official capacity.[18] Judicial immunity does not apply here because Judge Day was not sued in his individual capacity. *Ex parte Young* provides an exception to the judicial immunity for claims seeking relief against a judge in his official capacity.[19] Plaintiff is suing Judge Day in his official capacity and asking for a declaratory judgement only. If necessary, Plaintiffs would seek leave to file an amended complaint, to clarify that the request for a remand is in fact a request for a declaration. While the complaint contains other claims and other forms of relief requested, these do not involve Defendant Judge Day. The motion to dismiss also discusses the non- availability of potential money damages against this Defendant, or the State by extension and such remedies were never sought by Plaintiff.

**v. Plaintiff properly states a claim for ADA Title II violations.**

As stated in Plaintiff's Statement of the Facts, Plaintiff and Witness were both subpoenaed by the Court to appear for an Evidentiary Hearing to testify, though they were not permitted by Judge Day to do so (SAC ¶132). Within the scope of the Americans with Disabilities Act, a person is understood to have a physical or mental impairment that substantially limits a major life activity. Plaintiff has a severe hearing impairment, which was on record with the Court. Plaintiff's request for accommodation was not new. Additional details

---

[16] *Lawrence*, 271 Fed. Appx. at 766, 2008 WL 822458 *3.
[17] *Crowe & Dunleavy, PC, v. Stidman,* 640 F.3d 1140, 1156 (10 Cir. 2011).("When it comes to defenses of liability, an official in a personal-capacity action may . . . be able to assert personal immunity defenses. . . . In an official-capacity action, these defenses are unavailable.").
[18] See, e.g., *Kemp*, 478 F.3d at 1255-56.
[19] *Id.*; *Kentucky v. Graham*, 473 U.S. 159, 167 (1985).

related to the history of Plaintiff's requests and when they were approved versus this emergency hearing instance when they were denied exist. Pursuant to the complaint, without divulging this additional information, a claim upon which relief could be granted was stated: the Plaintiff is disabled, requested a reasonable accommodation, and was denied. Defendant Judge Day referenced the short time allotted for the hearing as well as the length of time that would lapse before a continuation of the hearing could be scheduled (SAC ¶¶132-140). By not alotting enough time, Judge Day exacerbated Plaintiff's impairment and diminished his opportunity to meaningfully participate in the proceeding. Judge Day had stated an evidentiary hearing might become necessary based on what was said and heard that September 4th, 2014, and it would appear that the scenario that would warrant scheduling the matter for a longer time frame as an evidentiary hearing since the Plaintiff did not have time to present any evidence due to no fault of his own (Defendants VCP III and NE Apartments had filed their motions and scheduled the time).

**IV. Conclusion**

Based on the foregoing arguments, Plaintiff opposes Defendant Judge Jack Day's Motion to Dismiss and respectfully requests that this Court deny the related relief sought in the Motion. In the event that the Court grants any portion of Defendant Judge Day's Motion, Defendant requests a dismissal without prejudice and an opportunity to amend any such count of the Complaint.

February 26, 2021

Respectfully submitted,

*Ralph Strzalkowski*
_____
Ralph Strzalkowski Esq.
Attorney for Defendant Don Juravin
  Florida Bar No. 89248
**FLORIDA RIGHTS LAW FIRM**
695 Central Avenue, Suite 264
St. Petersburg, Florida 33712
Telephone:    (813) 613-2400
Facsimile:    (727) 362-1979
Email: rs@lawyeronwheels.org


_____
Amber Robinson, Esq.
Attorney for Defendant Don Juravin
Fla. Bar No. 0107215
**FLORIDA RIGHTS LAW FIRM**
695 Central Avenue, Suite 264
St. Petersburg, Florida 33712
Telephone:    (813) 613-2400
Facsimile:    (727) 362-1979
Email: arobinson@arobinsonlawfirm.com


### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 26, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to those persons capable of receiving such notice of electronic filing.

/s/ *Amber Robinson*
_____
Co-Counsel for Plaintiff