## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

THOMAS J. NESTOR,

     Plaintiff,

v.                             Case No: 8:20-cv-265-CEH-TGW

JACK DAY,

     Defendant.

_____/

## ORDER

     This matter comes before the Court on Defendant Judge Jack Day's Motion to Dismiss Second Amended Complaint (Doc. 19).   Defendant argues that Plaintiff's claims fail for lack of subject-matter jurisdiction and for failing to state a claim. Plaintiff filed a response in opposition. Doc. 35. The Court, having considered the motion and being fully advised in the premises, will grant Defendant Judge Jack Day's Motion to Dismiss Second Amended Complaint and dismiss all claims against Judge Day, with prejudice.

## I.  BACKGROUND[1]

### A.  Procedural Background

---

[1] The following statement of facts is derived from the Second Amended Complaint (Doc. 12), the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

Plaintiff, Thomas Nestor, ("Plaintiff" or "Nestor") sued Defendants, VPC3 II, LLP and N.E. Apartments Associates, Inc, in a four-count complaint in February 2020. Doc. 1. On June 2, 2020, Plaintiff filed a five-count Amended Complaint,[2] adding Judge Jack Day as a named Defendant. Doc. 6. On August 31, 2020, the Court *sua sponte* dismissed Plaintiff's Amended Complaint as a shotgun pleading. Doc. 11. On September 14, 2020, Plaintiff filed a Second Amended Complaint which is the operative complaint. Doc. 12.

In the Second Amended Complaint, Plaintiff asserts five causes of action against Defendants, VPC 3 II, LP; N.E. Apartments, Inc.; and Judge Jack Day: Due Process Right to a Hearing (Count I); 14th Amendment Right to an Impartial Trial (Count II); Unjust Enrichment Only as to Defendants VPC3 II, LP and N.E. Apartments Associates, Inc. (Count III); Fifth Amendment Due Process Violation (Count IV); and Violations of the Americans with Disabilities Act (Count VI).[3] Doc. 12. Plaintiff alleges that his claims arise under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983. Doc. 12 at 2, ¶ 1. He seeks preliminary and permanent injunctive relief. *Id.* ¶ 2.

Plaintiff is a resident of Pinellas County, Florida. *Id.* at 3, ¶ 5. Defendant VPC3 II, LP ("Seller") is a Florida limited liability partnership in St. Petersburg, Florida. *Id.* at 3, ¶ 7. Defendant N.E. Apartments Associates, Inc. ("Intervenor") is a Florida

---

[2] Although the Amended Complaint includes a Count VI, it contains only five counts because it skips Count V. *See* Doc. 6.
[3] Like the Amended Complaint, Plaintiff's Second Amended Complaint skips from Count IV to Count VI; it does not contain a count labeled "Count V." Doc. 12.

corporation in Miami, Florida. *Id.* a 3, ¶ 8. Defendant Judge Jack Day ("Judge Day" or "Defendant") is a Circuit Judge for the Sixth Judicial Circuit of the State of Florida. *Id.* ¶ 9. Plaintiff alleges that Judge Day is sued "in his official capacity and for declaratory and injunctive relief only" and that, at all times, Judge Day was acting "under color and authority of state law." *Id.* Pursuant to Plaintiff's request, the Court dismissed Seller and Intervener from this action on April 6, 2021. Docs. 39–41. Thus, the only claims that remain are against Judge Day.

### B.  Factual Background and State Court Lawsuit

The lawsuit arises out of Plaintiff's negotiations with Seller in May 2012 regarding purchase of the landmark historic YMCA property, in St. Petersburg, Florida. *Id.* at 3, ¶ 1. Plaintiff and Seller entered a Letter of Intent ("LOI") on June 12, 2012, in which Plaintiff and a "New LLC (to be formed)" were listed as the buyers. *Id.* at 4, ¶¶ 3, 4. The LOI had no prohibitions on assignment. *Id.* at 4, ¶ 5. On September 21, 2012, Seller provided Plaintiff with a Purchase and Sale Agreement ("Purchase Contract"), which the parties signed on October 2, 2012. *Id.* at 4, ¶¶ 6, 7. Plaintiff alleges the Purchase Contract was assignable at any time and that it was always known that Plaintiff would assign the contract to the new owner because Plaintiff did not have the financial means to buy the building. *Id.* at 5, ¶¶ 12–15. According to Plaintiff's allegations, only the lease portion of the Purchase Contract had limitations regarding assignment. *Id.* at 5, ¶¶ 16, 17. Payments were made toward the purchase of the historic property, but on March 18, 2014, the Seller attempted to terminate the Purchase

Contract. *Id.* at 6, ¶¶ 20, 21. On March 23, 2014, Plaintiff filed suit in the Circuit Court for the Sixth Judicial Circuit against the Seller ("State Court Action"), and Judge Day was assigned to the case. *Id.* at 6, ¶¶ 23, 24.

In the State Court Action, Plaintiff complained that the Seller breached the Purchase Contract. *Id.* at 6, ¶ 22. After litigating the case for months, Plaintiff, Seller, and Intervenor N.E. Apartments Associates Inc. settled the action and entered into an agreement ("Settlement Agreement") on June 26, 2014. *Id.* at 6–7, ¶¶ 29–30. The Settlement Agreement reinstated the Purchase Contract and permitted assignment. *Id.* at 7, ¶¶ 32–33. Plaintiff, with the Seller's knowledge, assigned the Purchase Contract twice before closing day on July 15, 2014. *Id.* at 7, ¶¶ 36–39. The Seller raised no objections to Plaintiff's two assignments before closing day. *Id.* at 8, ¶¶ 41, 44, 53. On the day before closing, Plaintiff alerted Seller and Intervenor he would be assigning his role as buyer to another party to be determined at the closing. *Id.* at 9, ¶ 52.

On July 23, 2014, both Seller and Intervenor filed Emergency Motions to Enforce Settlement Agreement, claiming Plaintiff breached the Settlement Agreement by failing to pay the correct amount due to close and assigning the Purchase Contract to an unrelated entity. *Id.* at 16, ¶¶ 109–11. Judge Day scheduled a 30-minute hearing on the emergency motions for September 4, 2014. *Id.* at 16, ¶¶ 112–13. Despite Seller and Intervenor acknowledging there "may be factual disputes" and the parties agreeing that all evidence may be presented at the hearing, Judge Day ruled against Plaintiff after hearing only Seller's and Intervenor's evidentiary presentation. *Id.* at 17,

4

¶¶ 119–25. Plaintiff's counsel requested permission from Judge Day to present his evidence and testimony at the September 4th hearing, but was denied. *Id.* at 17–18, ¶¶ 126, 129–31. Judge Day also denied Plaintiff an evidentiary hearing and refused to allow him to present his breach of contract claims against the Seller despite Plaintiff's readiness to fully present his case, having subpoenaed a witness and prepared trial exhibits. *Id.* at 18, ¶¶ 127–28, 131–34.

Judge Day denied Plaintiff's requests to present his claims and evidence because the hearing was not noticed as an evidentiary hearing and it was scheduled for thirty minutes during lunch. *Id.* at 18, ¶ 135. Earlier in the hearing, Judge Day stated there "may be a need" for an evidentiary hearing and that he did not want to "deprive anybody of their say." *Id.* at 18, ¶¶ 136–37. Judge Day claimed that Seller and Intervenor had already used half the hearing time and the court would not bog down the hearing to allow Plaintiff time to review the transcript of his deposition, stating that the court's next hearing time was in January. *Id.* at 19, ¶¶ 138–40. Although Judge Day permitted Plaintiff to proffer evidence for the court to consider, at that point, Judge Day had already ruled. *Id.* at 19, ¶¶ 141–43.

In a non-final order dated September 19, 2014, Judge Day found that Plaintiff had materially breached the Purchase Contract and the Settlement Agreement and terminated Plaintiff's rights under the Purchase Contract. *Id.* at 19, ¶¶ 145–46. On September 22, 2014, Plaintiff appealed Judge Day's decision to the Second District Court of Appeal of Florida, which affirmed in a *per curiam* opinion and did not issue a written opinion. *Id.* at 14–15, ¶¶ 88, 100–01; *see also Nestor v. VPC 3, II, LLP*, 181 So.

3d 493 (Fla. DCA 2015). Judge Day entered a final order on June 10, 2015, *nunc pro tunc* to September 19, 2014. *Id.* at 15, ¶¶ 95. Plaintiff moved for a written opinion, certification, rehearing, and rehearing *en banc* on October 10, 2015, stressing the need for a written opinion to improve Plaintiff's chance at receiving review from the Florida Supreme Court. *Id.* at 16, ¶¶ 102–03. The appellate court denied this motion and entered a mandate ratifying its denial on December 30, 2015. *Id.* at 16, ¶¶ 104–05. Finally, the Florida Supreme Court denied review in February 2016. *Id.* at 16, ¶ 106. A master dismissal order of the case was entered March 8, 2017. *Id.* at 16, ¶ 107.

### C.    Plaintiff's Federal Claims

Plaintiff now sues Judge Day in federal court alleging that Judge Day violated Plaintiff's due process rights to a hearing by requiring Plaintiff to prove his right to an evidentiary hearing and failing to hold such a hearing (Count I). *Id.* at 20, ¶¶ 149–53. Plaintiff also alleges Judge Day violated his Fourteenth Amendment right to an impartial trial by only allowing the Seller and Intervenor to present evidence at the September 2014 hearing before ruling, thus failing to conduct a fair and impartial hearing (Count II). *Id.* at 20–21, ¶¶ 155–61. Additionally, Plaintiff alleges Judge Day violated his Fifth Amendment due process rights by failing to provide Plaintiff with a hearing (Count IV). *Id.* at 22, ¶¶171–73. Finally, Plaintiff alleges that Judge Day violated the Americans with Disabilities Act (ADA) because Plaintiff is a qualified individual with a disability, made the judge aware of that fact, requested reasonable accommodations, and was discriminated against by Judge Day (Count VI). *Id.* at 22–

24, ¶¶ 176–183. Plaintiff requests that the case be remanded for a full evidentiary review and he be awarded compensatory damages, attorney's fees and costs. *Id.* at 24, ¶ 1. Alternatively, Plaintiff requests the court enter a declaratory judgment stating that he is the rightful owner of the property and enforcing the original agreement between him and the Seller or injunctive relief preventing the Intervenor from transferring title to the property again or to another third party. *Id.* at 24, ¶¶ 2–3.

### D.   Motion to Dismiss and Response

Judge Day moves to dismiss all claims against him under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for lack of subject-matter jurisdiction and failure to state a claim. Doc. 19 at 1. Specifically, he claims that the Court lacks subject-matter jurisdiction under the *Rooker-Feldman*[4] doctrine, that the complaint is a shotgun pleading, that the claims against him are barred by the statute of limitations, that he is not a proper defendant because of sovereign immunity, that the claims against him are barred by judicial immunity, and that the ADA claim is insufficiently pleaded. *Id.* at 9–20.

Plaintiff opposes the motion to dismiss, arguing that the *Rooker-Feldman* doctrine does not apply because he is not attempting to overturn the state court judgment and that the ADA cause of action is an independent claim. Doc. 35 at 3. He also claims that the complaint is not a shotgun pleading, nor barred by the statute of limitations. *Id.* at 4–10. And he asserts that his claims are not barred by sovereign or

---

[4] This doctrine, derived from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), precludes lower federal courts from reviewing state court judgments. *See Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279 (11th Cir. 2018).

judicial immunity because of the *Ex parte Young*[5] exception and the fact that he has sued Judge Day in his official capacity only. *Id.* at 10–12. Finally, Plaintiff asserts that the facts alleged for the ADA cause of action are sufficient to state a claim upon which relief can be granted. *Id.* at 12–13. Plaintiff requests the Court deny Defendant's motion to dismiss or, if the Court grants any part of the motion, that the complaint be dismissed without prejudice and he be given leave to amend his complaint. *Id.* at 13.

## II.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient.   *Id*. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient.  *Id*.  A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint.  *Id*.

---

[5] The *Ex parte Young* doctrine provides an exception to sovereign immunity for suits against state officials seeking prospective equitable relief to end continuing violations of federal law. *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326 (11th Cir. 1999).

A motion to dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) can be either a facial attack or a factual attack. *Barnett v. Okeechobee Hosp.*, 283 F.3d 1232, 1237 (11th Cir. 2002). A facial challenge to subject-matter jurisdiction under Rule 12(b)(1) "requires [] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (citations omitted). In assessing a motion to dismiss pursuant to Rule12(b)(1), the Court affords Plaintiff the same safeguards as those provided in opposing a Rule 12(b)(6) motion, it considers all allegations of the complaint as true, and is confined to the four corners of the complaint. *Id.*

## III.   DISCUSSION

### A.   The *Rooker-Feldman* Doctrine and Plaintiff's Constitutional Claims

In his Second Amended Complaint, Plaintiff alleges Judge Day violated his constitutional rights. Although raised in three separate counts, Plaintiff alleges violations of his due process rights purportedly due to the unfairness of the hearing conducted by Judge Day on September 4, 2014. *See* Doc. 12 at 20–22. In Count I ("Due Process Right to a Hearing"), Plaintiff alleges Judge Day required Plaintiff to prove his due process right to an evidentiary hearing and deprived Plaintiff of his due process rights when he failed to hold an evidentiary hearing. *Id.* ¶¶ 149, 150, 153. In Count II ("14th Amendment Right to an Impartial Trial"), Plaintiff alleges Judge Day allowed Seller and Intervenor to present evidence, demonstrative aids, and exhibits at an

emergency hearing, did not allow Plaintiff the same opportunity, and failed to conduct a fair and impartial hearing violating Plaintiff's right to a fair trial. *Id.* ¶¶ 155, 156, 157, 159. In Count IV ("Fifth Amendment Due Process Violation"), Plaintiff alleges Judge Day violated his due process rights by failing to provide Plaintiff with a hearing resulting in deprivation of property. *Id.* ¶ 172. Despite Plaintiff's attempt to fashion his claims as constitutional violations, they are a direct attack on the state court judgment.

Judge Day argues the Court lacks subject-matter jurisdiction over Plaintiff's constitutional claims based on the *Rooker-Feldman* doctrine. In general, the *Rooker-Feldman* doctrine prohibits federal district courts from reviewing state court decisions. *Nicholson v. Shafe*, 558 F.3d 1266, 1270 (11th Cir. 2009). The result of the *Rooker-Feldman* doctrine is to prevent district courts from exercising subject matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Plaintiff argues that the *Rooker-Feldman* doctrine is inapplicable because he "is not seeking to overturn the judgment from the State Court." Doc. 35 at 3. However, on the instant motion to dismiss, the Court is confined to consideration of the four corners of Plaintiff's complaint, and review of the Second Amended Complaint reveals that is precisely what Plaintiff requests. In his Second Amended Complaint, Plaintiff seeks the following alternative relief:

> 2. In the alternative enter a declaratory judgment for Plaintiff finding Plaintiff complied with the closing requirements for the landmark YMCA property and is the

rightful owner of the rights to the Property, thus enforcing agreements made between the Plaintiff and Defendant Seller;

3. Enter Injunctive relief preventing Defendant Intervenor from transferring title to the landmark Property again or to another third party.

Doc. 12 at 24. The requested relief pertains to all Counts of the Second Amended Complaint, including the constitutional claims. *Id.* In the State Court Action, Judge Day ruled against Plaintiff finding he materially breached the Purchase and Sale Agreement by assigning the contract to an unrelated entity and in failing to pay the correct amount at closing. Doc. 12 ¶ 146. Plaintiff is now explicitly requesting this Court to review and reject Judge Day's judgment in state court and find, to the contrary, that Plaintiff did comply with the closing requirements and that Plaintiff is the rightful owner of the YMCA property. Under *Rooker-Feldman,* the Court is without jurisdiction to review and reject Judge Day's judgment.

In discussing the *Rooker-Feldman* doctrine, the Eleventh Circuit recently explained its limited application:

> Following *Exxon Mobil*, our Circuit recognized the limited scope of the *Rooker–Feldman* doctrine as it has been described by the Supreme Court. We have since declined to apply our previous test for *Rooker–Feldman* analysis and have instead hewn closely to the language of *Exxon Mobil*. *See Nicholson v. Shafe*, 558 F.3d 1266, 1274 (11th Cir. 2009). Consistent with the directions of the Supreme Court, we now apply *Rooker–Feldman* to bar only those claims asserted by parties who have lost in state court and then ask the district court, ultimately, to review and reject a state court's judgments. *Id.* at 1268 (quoting *Exxon Mobil*, 544 U.S. at 284, 125 S.Ct. 1517).

11

*Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1285–86 (11th Cir. 2018); *see also Behr v. Campbell*, No. 18-12842, 2021 WL 3559339, at *3 (11th Cir. Aug. 12, 2021) (noting that the Eleventh Circuit abandoned the four-factor test that had previously guided this Circuit's application of *Rooker-Feldman*).

Pertinent to the analysis, a federal court must first determine if the state court proceedings have concluded for *Rooker-Feldman* purposes. *Velazquez v. S. Fla. Fed. Credit Union*, 546 F. App'x 854, 857 (11th Cir. 2013). Here, Plaintiff appealed the trial court's decision to the Second District Court of Appeal, which affirmed in a *per curiam* opinion. Plaintiff's requests for rehearing and a written opinion were denied. Further, Plaintiff's efforts to seek review by the Florida Supreme Court were denied. No appeal is pending and there was nothing further to resolve in the state court proceedings when Plaintiff commenced this action. Thus, the state proceedings have ended for purposes of *Rooker–Feldman. See Nicholson v. Shafe*, 558 F.3d 1266, 1277 (11th Cir. 2009).

The gravamen of Plaintiff's Second Amended Complaint as it relates to Judge Day is Plaintiff is discontented with Judge Day's rulings against him following a hearing in which he claims he could not present his testimony and evidence. Review of Plaintiff's allegations reveals that Plaintiff is the typical "state-court loser," complaining of injuries caused by a state-court judgment rendered before the instant proceedings commenced. Thus, the only remaining issue is whether Plaintiff's complaint invites this Court to review and reject that judgment. Plaintiff argues he does not, but as noted above, that is precisely what Plaintiff seeks, *i.e.*, a rejection of

Judge Day's judgment and a finding that Plaintiff complied with the closing requirements and is the owner of the YMCA property (Doc. 12 at 24, ¶¶ 2, 3).

While the claims asserted in the Second Amended Complaint were not adjudicated in the state court, they are inextricably intertwined. *See Target*, 881 F.3d 1286 (holding that courts continue to consider whether a claim was either actually adjudicated by a state court or one "inextricably intertwined" with a state court judgment when determining which claims invite rejection of a state court decision). A federal claim is inextricably intertwined with a state-court judgment if it asks "to effectively nullify the state court judgment, or the federal claim succeeds only to the extent that the state court wrongly decided the issues" before it. *Id.* (quoting *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009)). "[T]o be barred by *Rooker-Feldman* requires that it amount to a direct attack on the underlying state court decision." *Behr*, 2021 WL 3559339, at *4 (quoting *Target Media*, 881 F.3d at 1288). Here, the remedy Plaintiff seeks for each of the constitutional counts reflects a direct attack on the state court judge's rulings. Plaintiff also asks this Court to remand the case to the state court for full evidentiary review and for compensatory damages, attorney's fees and costs.

Because *Rooker-Feldman* is limited in its application, it "requires a more targeted approach." *Behr*, 2021 WL 3559339, at *5. The question is "whether resolution of each individual claim requires review and rejection of a state court judgment." *Id.* Here, resolution of Counts I, II and IV requires review and rejection of the state court judgment. Plaintiff alleges in each of these counts that Judge Day denied him due process by not conducting an evidentiary hearing, by allowing the Seller and

Intervenor to present evidence when he was prohibited, and by not providing him with a fair and impartial hearing. Resolution of any of these Counts invites the Court to reject the state court judgment that resulted from the allegedly unfair hearing and denial of due process in the State Court Action. Plaintiff specifically requests this Court to make findings that he did comply with the closing requirements, that he did not breach the contract, and that he is the owner of the subject property. *Rooker-Feldman* bars Plaintiff's attempt to appeal the state court ruling's to the contrary— "whether the plaintiff admits to filing a direct appeal of the judgment or tries to call the appeal something else." *Behr*, 2021 WL 3559339, at *3 (citing *May v. Morgan Cty.*, 878 F.3d 1001, 1005 (11th Cir. 2017)). Accordingly, the Court lacks subject-matter jurisdiction to consider Plaintiff's constitutional claims in Counts I, II, and IV to the extent Plaintiff is asking this Court to review and reject Judge Day's judgment and substitute it with a finding in Plaintiff's favor as to his status under the Purchase Contract.

"The *Rooker–Feldman* doctrine is broad enough to bar all federal claims which were, or should have been, central to the state court decision, even if those claims seek a form of relief that might not have been available from the state court." *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1333 (11th Cir. 2001). Despite Plaintiff's assertion that he is merely seeking to have the denial of his due process rights addressed, he explicitly asks this Court to undo the state court decision (Doc. 12 at 24, ¶¶ 2, 3), which the Court lacks jurisdiction to do under *Rooker-Feldman*.

In *Behr*, the Eleventh Circuit clarifies, however, that *Rooker-Feldman* will not block a plaintiff's presentation of an "independent claim, albeit one that denies a legal

conclusion that a state court has reached in a case to which he was a party." *Behr*, 2021 WL 3559339, at *4 (quoting *Exxon Mobil*, 544 U.S. at 293). Because *Rooker-Feldman* arguably does not bar consideration of Plaintiff's allegations of discrimination under the ADA as an independent claim, the merits of the ADA claim are addressed below.

## B.   Plaintiff's ADA Claim Fails

As a preliminary matter, there is no individual capacity liability under Title II of the ADA. *Badillo v. Thorpe*, 158 F. App'x 208, 211 (11th Cir. 2005) (citation omitted).[6]  Therefore, a Title II ADA claim against Judge Day, individually, fails as a matter of law. To the extent Plaintiff is suing Judge Day in his official capacity under the ADA, Plaintiff has not pleaded sufficient facts to state a claim under Title II of the ADA. In order to state a Title II claim, Plaintiff must prove: (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of Plaintiff's disability. *Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1083 (11th Cir. 2007).

It is wholly unclear from the Second Amended Complaint what is Plaintiff's claimed disability. His pleading is devoid of any facts discussing Plaintiff's disability, how he was discriminated against, what accommodation he sought, or how any

---

[6] In the Eleventh Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." *United States v. Rodriguez*, 751 F. 3d 1244, 1251 n. 5 (11th Cir. 2014) (quoting 11th Cir. R. 36-2).

exclusion or discrimination was due to a disability. While he makes passing reference to a hearing impairment in his response to Defendant's motion, *see* Doc. 35 at 12, no such allegation appears in any of his complaints. Additionally, as noted in the motion to dismiss, Plaintiff's allegations in paragraph 182 of the Second Amended Complaint regarding the State's behavioral health system and the failure to provide services in a more integrated system are nonsensical in this action and clearly unrelated to any alleged conduct by Judge Day.

A liberal reading of Plaintiff's allegations is that he is complaining of not receiving a hearing time longer than thirty minutes, not being permitted to present testimony of a witness at a hearing, and not being provided time to review a deposition transcript that he had only just received. These allegations fall far short of stating a claim for Title II ADA discrimination. Thus, Count VI of Plaintiff's Second Amended Complaint is subject to dismissal under Fed. R. Civ. P. 12(b)(6).

Judge Day argues that Plaintiff's claims are barred by the statute of limitations. Doc. 19 at 12–14. Accordingly, amendment of the ADA claim would be futile where the applicable statute of limitations has expired.

As the ADA does not provide a statute of limitations, the Court must apply the most analogous state statute of limitations.[7] *Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d

---

[7] Causes of action arising under federal statutes enacted after December 1, 1990 without a specified statute of limitations are subject to the 4-year statute of limitations imposed by 28 U.S.C. § 1658(a). *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004). The ADA, however, was enacted on July 26, 1990, and is still subject to the most analogous state statute of limitations. 136 Cong. Rec. D960-01.

824, 841 (11th Cir. 2017). The statute of limitations on a federal ADA claim arising in Florida is four years. *See Everett v. Cobb County Sch. Dist.*, 138 F.3d 1407, 1409 (11th Cir. 1998); *Ross v. Jim Adams Ford, Inc.*, 871 So.2d 312, 314 (Fla. 2d DCA 2004); Fla. Stat. § 95.11(3) (2020). A statute of limitations begins to run when the cause of action accrues. *Hearndon v. Graham*, 767 So. 2d 1179, 1184 (Fla. 2000). It is undisputed that the conduct complained of in Count VI began and ended entirely at the September 4, 2014 hearing. Plaintiff sued over five years later, in February of 2020. The four-year statute of limitations as to Count VI has expired.

Plaintiff generally raises equitable tolling in an effort to overcome the application of a statute of limitation. However, equitable tolling does not save Plaintiff's ADA claim. The equitable tolling doctrine allows for an otherwise untimely claim to be adjudicated and is generally applied in Florida when a plaintiff has been misled or lulled into inaction, has in some extraordinary way been prevented from asserting his rights, or has timely asserted his rights mistakenly in the wrong forum. *Machules v. Dep't of Admin.*, 523 So. 2d 1132, 1134 (Fla. 1988). Plaintiff does not claim to have been misled or lulled into inaction by anyone as it relates to his ADA claim, nor does he plead any extraordinary circumstances that would have prevented him from asserting his rights earlier. To the contrary, by his allegations, he was fully aware at the September 2014 hearing that he perceived he was being discriminated against as he claims he "informed Judge Day of his disability and requested reasonable accommodation." Doc. 12 at 23, ¶ 180. Nothing prevented Plaintiff from timely asserting a claim. As such, the equitable tolling doctrine does not apply to save his

time-barred ADA claim in Count VI. Therefore, amendment would be futile, and the claim is due to be dismissed with prejudice.

### C.   Official Capacity and Personal Capacity – Constitutional Claims

Even if it is determined that *Rooker Feldman* does not apply to Plaintiff's constitutional claims, they are nevertheless subject to dismissal. In his motion to dismiss, Judge Day argues he is immune from Plaintiff's claims in their entirety because the actions he took, of which Plaintiff complains, were in his judicial capacity and within his judicial discretion. Doc. 19 at 16. Plaintiff counters Judge Day's assertion, arguing that declaratory relief is still available against judges under 42 U.S.C. § 1983 and that judicial immunity can only bar personal capacity suits, not official capacity ones. Doc. 35 at 11–12. Plaintiff contends that, because he is suing Judge Day in his official capacity and exclusively seeking a declaratory judgment, his suit is not barred by judicial immunity. *Id.* at 12.

### 1.   *Plaintiff's Claims against Judge Day in his Official Capacity Fail*

"Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166. "It is *not* a suit against the official personally, for the real party in interest is the entity." *Id.* Additionally, to establish liability in an official-capacity suit, more is required than simply showing that the official, acting under color

18

of state law, deprived a federal right, unlike a personal-capacity suit. *Id.* "[A] governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation" of a federal right. *Id.* (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981)). The Second Amended Complaint fails to allege notice or that the entity was a moving force behind the deprivation. More critically, however, the governmental entity is an arm of the state, which cannot be sued under § 1983.

Here, Plaintiff alleges that he is suing Judge Day purely in his official capacity. Doc. 12 ¶ 9. Thus, the real party in interest is the Sixth Judicial Circuit, which is a state entity. For purposes of a § 1983 claim, "a State is not a 'person.'" *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 617, (2002) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989)). Because State Defendants sued in their official capacities are not persons under § 1983, they cannot be sued for money damages. *See Will*, 491 U.S. at 71.

Additionally, Eleventh Amendment sovereign immunity bars claims against the State and its entities under § 1983. *See Quern v. Jordan*, 440 U.S. 332, 342 (1979). In *Badillo v. Thorpe*, 158 F. App'x 208 (11th Cir. 2005), the Eleventh Circuit affirmed the district court's dismissal of plaintiff's § 1983 claims against the state court judge sued in her official capacity, holding that the Eleventh Amendment "protects a State from being sued in federal court without the State's consent." *Id.* at 212 (quoting *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003), *cert. denied*, 540 U.S. 1107 (2004)). *Manders* identified four factors courts should consider in determining whether a defendant is an

19

"arm of the state" for Eleventh Amendment immunity purposes: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Manders*, 338 F.3d at 1309. Applying the *Manders'* factors, the *Badillo* court concluded that the circuit court judge sued in federal court was an arm of the state for Eleventh Amendment purposes and therefore enjoyed sovereign immunity from the plaintiff's § 1983 claims. *See Badillo*, 158 F. App'x at 212–13 (holding Eleventh Amendment immunity applied to bar hearing-impaired, *pro se* litigant's § 1983 claim for legal and equitable damages against a Florida circuit court judge in her official capacity, brought in connection with a failure to postpone a hearing or provide an infrared assistive listening device). Similarly, Plaintiff's constitutional claims against Judge Day in his official capacity as an agent of the Sixth Judicial Circuit are claims against the State, which are barred under the Eleventh Amendment.

Plaintiff argues the *Ex parte Young* doctrine precludes application of Eleventh Amendment sovereign immunity. The Court disagrees. The *Ex parte Young* exception to Eleventh Amendment immunity "allows state officials to be sued in their official capacities by plaintiffs 'seeking prospective equitable relief to end continuing violations of federal law.'" *Reprod. Health Servs. v. Strange*, 3 F.4th 1240, 1255 (11th Cir. 2021) (quoting *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999) (emphasis omitted)). The Supreme Court has explained "[i]n determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an

ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (quoting *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Review of the allegations of the Second Amended Complaint reveals Plaintiff complains only of alleged past violations of due process, specifically at the September 2014 hearing in which he contends he was denied the opportunity to be heard. There are no allegations of ongoing violations of federal law. Indeed, the State Court Action before Judge Day has long concluded, and Plaintiff's response clarifies that, as it relates to Judge Day, he is not seeking a remand, but rather a declaration. Thus, there is no situation in which Judge Day could be engaged in an ongoing violation of federal law where he has no further role in this matter. The *Ex parte Young* exception is inapplicable on the alleged facts, and Eleventh Amendment sovereign immunity applies to bar the claims against Judge Day in his official capacity.

2.    *Judge Day is Immune from a Personal Capacity Suit*

Notwithstanding Plaintiff's blanket statement that he is suing Judge Day in an official capacity only, the factual allegations in the Second Amended Complaint address Judge Day's actions taken personally, as a state court judge, which are barred by judicial immunity. "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Judicial immunity offers absolute immunity, barring personal-capacity claims against judges whose actions are within their judicial capacity and not in the "clear absence of all jurisdiction." *Stevens v. Osuna*, 877 F.3d

1293, 1302 (11th Cir. 2017). This immunity applies even when the judge's actions were erroneous, malicious, or in excess of their authority. *Scott v. Hayes*, 719 F.2d 1562, 1566 (11th Cir. 1983) (quoting *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978)). To determine whether a judge's act is judicial for the purpose of immunity, the court considers (1) whether the act complained of is a normal judicial function, (2) whether the events involved occurred in open court, (3) whether the controversy centers on a case pending before the judge, and (4) whether the confrontation arises directly and immediately out of a visit to the judge in his judicial capacity. *Id.* at 1565. Then, the court must determine whether the judge acted in the clear absence of all jurisdiction. *Id.* at 1566. When a judge's actions are within his judicial capacity and not in the clear absence of all jurisdiction, judicial immunity bars such claims. *Id.*

Judge Day's actions, as alleged in the Second Amended Complaint, are judicial in nature and within the scope of Judge Day's jurisdiction. In a case in which he was the assigned judge, Judge Day presided over a motion hearing, issued a ruling, and entered an order memorializing that ruling. The motion hearing took place in open court in the State Court Action. Judge Day was acting in his judicial capacity throughout the hearing. Finally, Judge Day's actions were within the scope of his jurisdiction as a Florida Circuit Court judge. *See* § 26.012(2)(a), Fla. Stat. (2020). Therefore, Judge Day's actions were judicial in nature and did not exceed his jurisdiction. Accordingly, absolute judicial immunity applies to bar any claim against Judge Day personally.

Plaintiff's attempts to confine his requested relief to declaratory and injunctive relief against Judge Day do not save his cause. Although both declaratory and prospective injunctive relief may be available in § 1983 actions even where judicial immunity would otherwise bar a claim,[8] they are improper to redress Plaintiff's claims against Judge Day here.[9] Simply because these types of relief are available does not mean they are appropriate. *See Badillo*, 158 F. App'x at 211. "To receive declaratory or injunctive relief against a judicial officer under Section 1983, the judicial officer must have violated a declaratory decree or declaratory relief must otherwise be unavailable." *Tarver v. Reynolds*, 808 F. App'x 752, 754 (11th Cir. 2020). Plaintiff's allegations seeking declaratory relief are not directed to Judge Day, instead they seek a declaration that Plaintiff is the rightful owner of the property vis-à-vis Seller, Intervenor, or other third party. Doc. 12 at 24, ¶ 2. Additionally, the injunctive relief Plaintiff seeks is to prevent Intervener from transferring title to the YMCA property to a third party; he does not seek to enjoin any conduct by Judge Day. *Id.* at 24 ¶ 3. Moreover, in order to receive declaratory or injunctive relief against a judicial officer, "there must be an inadequate remedy at law . . . [and a] state appellate process is an adequate remedy at law." *Tarver*, 808 F. App'x at 754. The sole focus of Plaintiff's allegations is to challenge Judge Day's decision, made in his judicial capacity in the

---

[8] *See Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984).

[9] "[J]udges defending against § 1983 actions enjoy absolute immunity from damages liability for acts performed in their judicial capacities." *Supreme Ct. of Virginia v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 734-35 (1980).

State Court Action, and which Plaintiff had the opportunity to and did appeal in state court. Judicial immunity bars such challenges.

Accordingly, it is hereby

**ORDERED**:

1.      Defendant Judge Jack Day's Motion to Dismiss Second Amended Complaint (Doc. 19) is **GRANTED**.

2.      The Court lacks subject-matter jurisdiction to review and reject Judge Day's state-court judgment under *Rooker-Feldman* as to Plaintiff's constitutional claims in Counts I, II, and IV.

3.      To the extent that *Rooker-Feldman* does not bar consideration of Plaintiff's constitutional claims, Plaintiff's claims in Counts I, II, and IV are dismissed, with prejudice, based on immunity.

4.      Plaintiff's Title II ADA claim against Judge Day in Count VI is dismissed, with prejudice.

5.      The Clerk is directed to close this case.

**DONE AND ORDERED** in Tampa, Florida on August 16, 2021.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
Unrepresented Parties, if any