## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

THOMAS J. NESTOR,

     Plaintiff,

v.                          CASE NO. 8:20-cv-265-CEH-TGW

VPC3 II, LLP, N.E. APARTMENTS
ASSOCIATES, INC., and JACK DAY

     Defendants.

_____/

## <u>ORDER</u>

THIS CAUSE came on for consideration upon the Defendants'

Verified Supplemental Motion on Amount of Attorneys' Fees (Doc. 59). In

opposition, the plaintiff has filed the affidavit of attorney Kennan George

Dandar (Doc. 62). The defendants filed a reply in opposition to the affidavit

of Mr. Dandar (Doc. 63). Having considered the materials submitted and the

governing legal standards, the defendants' motion is granted, however, only

to the extent that the defendants be awarded $58,083.75 in attorneys' fees.

I.

This matter arises out of the negotiations the plaintiff, Thomas

Nestor, had with the defendants, VPC3 II, LLP ("VPC3 II") and N.E.

Apartments Associations, Inc. ("N.E. Apartments") (collectively "the

1

defendants") in May 2012 regarding the purchase of the historic YMCA property in St. Petersburg, Florida (Doc. 12, p. 3, ¶1). VPC3 II acted as the seller and N.E. Apartments acted as the intervenor in the sale (id., pp. 3, 7, ¶¶1, 30).

The plaintiff alleged that VPC3 II attempted to impermissibly terminate the Purchase and Sale Agreement, executed by the parties, and, thus, on March 23, 2014, he sued VPC3 II for breach of contract in the Circuit Court for the Sixth Judicial Circuit of Florida (id., p. 6, ¶22). Judge Jack Day ("Judge Day"), the other defendant in this matter, was assigned to the case (id., ¶24). After several months of litigating, the plaintiff and the defendants entered into a Settlement Agreement on June 26, 2014, which reinstated the Purchase and Sale Agreement (id., pp. 6–7, ¶¶29–30). On July 23, 2014, the defendants filed Emergency Motions to Enforce Settlement Agreement, where they claimed that the plaintiff breached the agreement by failing to pay the proper amount at closing and for impermissibly assigning the Purchase and Sale Agreement (id., p. 16, ¶¶109–11). On September 4, 2014, Judge Day held a thirty-minute hearing on the matter and, thereafter, issued a non-final order wherein he found that the plaintiff had materially

2

breached both the Purchase and Sale Agreement and the Settlement Agreement (id., pp. 16, 19–20, ¶¶112–13, 145–46). Accordingly, he terminated the plaintiff's rights under the Purchase and Sale Agreement (id., pp. 19–20, ¶146).

The plaintiff appealed his case to the Second District Court of Appeal of Florida (id., p. 14, ¶88). The court, in a per curiam opinion, affirmed Judge Day's decision (id., p. 15, ¶100). Judge Day entered a final order on June 10, 2015 (id., ¶95). The plaintiff moved for review by the Florida Supreme Court, which was denied in February 2016 (id., p. 16, ¶106–07). A master dismissal order of the case was entered on March 8, 2017 (id., ¶108).

On February 3, 2020, the plaintiff filed a complaint against the defendants (Doc. 1). Thereafter, on June 2, 2020, the plaintiff filed an amended complaint, in which he added Judge Day as a defendant (Doc. 6). However, that motion was dismissed sua sponte as a shotgun pleading by United States District Judge Charlene Edwards Honeywell (see Doc. 11). Then, on September 14, 2020, the plaintiff filed a second amended complaint against all of the listed defendants, which sought "federal relief for civil

rights violations where the Plaintiff was deprived of his Fourteenth Amendment due process rights" (Doc. 12, p. 2). The second amended complaint is comprised of five counts, four of which are attributable only to Judge Day. There is a single claim of unjust enrichment against the corporate defendants (Count III) (id., pp. 20, 21, 22).

On April 5, 2021, the plaintiff filed an Unopposed Amended Motion for Dismissal of Claims (Doc. 40) against the corporate defendants only. Judge Honeywell granted the plaintiff's motion and his claim against those defendants was dismissed with prejudice (see Doc. 41). Judge Day filed a Motion to Dismiss the Second Amended Complaint (Doc. 19), which Judge Honeywell granted on April 6, 2021 (see Doc. 45).

On April 20, 2021, the defendants filed a Motion for Attorneys' Fees (Doc. 42), to which the plaintiff filed a vacuous response in opposition (Doc. 43). I held a hearing on the matter (Doc. 52). Subsequently, I issued an order granting the defendant's motion for attorney's fees as to entitlement only (see Doc. 58). In concluding my order, I directed that the defendants file attorney time records, justification for the hourly rates requested, and an itemized statement of costs, if any, within 30 days of my order, unless the

4

parties agreed to fees and costs (id., p. 13). Additionally, the plaintiff was directed that he was permitted to file a response within 30 days of the defendants' supplemental filing. Specifically, the plaintiff was directed that his response, if any, may

> take the approach of either considering each item individually or discounting the hours with an across-the-board reduction on some justifiable basis. If the plaintiff takes the approach of disputing specific hours, the plaintiff must file a statement within thirty (30) days of the defendants' filing of supporting documentation that states the objectionable hours, the reason(s) for the objection, and identify a reasonable time for that work. If the plaintiff objects to an hourly rate, the plaintiff must identify the rate, state the rate that they contend should apply, and explain the basis for that rate. The plaintiff may file an expert affidavit supporting the claimed time or rates. Additionally, the plaintiff must identify any cost as to which they object to reimbursement and specify the reason(s) for that objection. All time entries, rates, or costs not specifically objected to with a cogent explanation are subject to being granted.

(id., pp. 13–14).

Lastly, the defendants were permitted the ability to file a reply within 21 days of the plaintiff's response (id., p. 14).

5

The defendants filed the present Verified Supplemental Motion on Amount of Attorneys' Fees (Doc. 59). In that motion, they request $79,470.00 in attorneys' fees (id., pp. 2, 7). They have not made a request for costs. In response, the plaintiff filed the affidavit of attorney Kennan George Dandar ("Mr. Dandar") (Doc. 62). The defendants filed a reply in opposition to the affidavit of Mr. Dandar (Doc. 63).

II.

The defendants, as the prevailing party, are entitled to recover their reasonable attorneys' fees under the terms of the Settlement Agreement (see Doc. 58). Thus, the only matter remaining for determination is the amount of a reasonable attorneys' fees to be awarded.

"Principles governing Florida contract law apply to the interpretation and enforcement of settlement agreements." Conte v. Winn Dixie Stores, Inc., 2017 WL 4693072 at *2 (N.D. Fla. 2014); see also Resnick v. Uccello Immobilien GMBH, Inc., 227 F.3d 1347, 1350 (11th Cir. 2000). The Settlement Agreement indicates that Florida law shall govern

(Doc. 42-1, p. 10)[1]. As the defendants correctly state, the federal lodestar approach is recognized as the foundation for setting reasonable fee awards (see Doc. 59, p. 2). Florida courts have adopted the federal lodestar approach in determining a reasonable attorneys' fee. See Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 1150–52 (Fla. 1985); Bell v. U.S.B. Acquisition Co., Inc., 734 So.2d 403, 406 (Fla. 1999). This method requires the court to determine a "lodestar figure" by multiplying a reasonable hourly rate for the services of the prevailing party's attorneys by the number of hours reasonably expended on the litigation. Norman v. The Housing Authority of the City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988). The fee applicant bears the burden of presenting satisfactory evidence to establish that the requested rate is in accord with the prevailing market rate and that the hours are reasonable. Id. at 1299, 1303.

---

[1.] Thus, the Settlement Agreement states:
> **Choice of Law and Venue.**
> This Settlement Agreement shall be governed by the laws of the State of Florida. With respect to any legal proceeding relating to this Settlement Agreement, each Party hereto consents to the jurisdiction of the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida.

(Doc. 42-1, p. 10) (emphasis added).

7

Once the lodestar is determined, the court must then consider whether an adjustment of the lodestar for the results obtained is appropriate. See Perdue v. Kenny A. ex. rel. Winn, 559 U.S. 542, 552 (2010). Hours that are "redundant, excessive, or otherwise unnecessary" are not to be included in the determination of hours reasonably expended. See Perez v. Carey International, Inc., 373 Fed. Appx. 907, 911 (11th Cir. 2010) (internal citations omitted).

A.   Hourly Rates.

The court must determine a reasonable hourly rate for the services of the defendants' attorneys. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman v. The Housing Authority of the City of Montgomery, supra, 836 F.2d at 1299. The defendants, the fee applicants in this matter, bear the burden of providing "the court with specific and detailed evidence from which the court can determine [a] reasonable hourly rate." Id. at 1303. Evidence of prevailing rates for comparable services can be adduced either through direct evidence of charges by lawyers under similar circumstances

8

or by opinion. Id. Further, "[t]he court . . . is itself an expert on the question [of attorneys' fees] and may consider its own knowledge and experience concerning reasonable and proper fees." Id. at 1303 (internal citation omitted).

In this matter, the defendants were represented by attorneys Alice R. Huneycutt, John N. Muratides, and Nicole Neugebauer (Doc. 59, p. 2). All three attorneys are with the law firm Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A. ("Stearns Weaver") (id., pp. 2–3). Ms. Huneycutt, the undersigned attorney on the motion, is lead counsel in this matter and was assisted by Mr. Muratides and Ms. Neugebauer (id., p. 3). Ms. Huneycutt has practiced litigation in Florida for 42 years and Mr. Muratides has practiced litigation in Florida for 39 years (id., pp. 2, 3). Defense counsel states that "[t]heir standard hourly billing rates are $550.00; however [they] agreed to work on th[e] case at a reduced hourly rate of $375.00" (id., p. 3). Ms. Neugebauer has been admitted to practice in Florida since November 2020 (id.). Ms. Neugebauer's hourly rate is $250.00 (id.). Finally, Ms. Lynn Derenthal, a paralegal with Stearns Weaver, worked on this matter. The defendants request an hourly rate of $225.00 for Ms. Derenthal's work (id.,

9

p. 5). Notably, no information has been provided regarding Ms. Derenthal's legal experience (id.).

As indicated, the plaintiff filed an affidavit by attorney Kennan George Dandar in opposition to the defendants' motion. Mr. Dandar states that he has been licensed in Florida since 1979 and is "familiar with attorney's fees awarded to counsel in the State of Florida" (Doc. 62, p. 1). Mr. Dandar does not provide any information regarding his area of expertise, if any, and whether he still practices law in Florida. In his affidavit, Mr. Dandar only addresses the hourly rate of Ms. Huneycutt (id.). However, Mr. Dandar does not contest the reasonableness of Ms. Huneycutt's hourly rate (id.).[2] Thus, it is presumed that the plaintiff does not oppose the reasonableness of defense counsel's hourly rates.

Taking into consideration counsel's experience, the prevailing market rates in the area, and the lack of opposition from the plaintiff, I conclude that the requested rates for the attorneys are reasonable. See Norman v. The Housing Authority of the City of Montgomery, supra, 836

---

[2.] Thus, Mr. Dandar states, "[t]he hourly rate of $350 to $375 for Alice R. Huneycutt is reasonable" (Doc. 62, p. 1).

F.2d at 1303 (providing that the court itself is an expert in determining prevailing market rates). Accordingly, Ms. Huneycutt and Mr. Muratides shall be awarded an hourly rate of $375.00, and Ms. Neugebauer shall be awarded an hourly rate of $250.00. However, the requested hourly rate of $225.00 for Ms. Derenthal is too high. As indicated, no information has been provided regarding Ms. Derenthal's legal experience. Further, a large part of the billing records by Ms. Derenthal indicates that the work performed involved "compiling documents," "prepar[ing] documents," and "adding citations," which constitutes paralegal work (Doc. 59, p.13). Paralegal work may not be charged against an opposing party at attorney rates and, notably, Ms. Derenthal's rate is only $25.00 less than Ms. Neugebauer's. See Allen v. U.S. Steel Corp., 665 F.2d 689, 697 (5th Cir. 1982); see also Omnipol, A.S. v. Worrell, 8:19-CV-794-VMC-TGW, 2021 WL 1842212 at *5 (M.D. Fla. Mar. 23, 2021), report and recommendation adopted, 8:19-CV-794-VMC-TGW, 2021 WL 1840513 (M.D. Fla. May 7, 2021). Accordingly, based on my review of the relevant authorities and my own experience, an hourly rate of $100.00 for Ms. Derenthal is reasonable.

     B.     Reasonableness of the Number of Hours Expended.

The second half of the lodestar determination requires the court to calculate the number of hours reasonably expended on the litigation. Accordingly, the court "still must determine whether time was reasonably expended, and if it was not, that time should be excluded from the fee calculation." Perez v. Carey International, Inc., supra, 373 Fed. Appx. at 911. It is the fee applicant's burden to adequately document the number of hours expended on a given case. Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). Thus, "[the fee applicant] should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." Norman v. The Housing Authority of the City of Montgomery, supra, 836 F.2d at 1303. The applicant bears the burden of supplying such evidence to the court for its review. Id.

Defense counsel states that they worked numerous hours on this matter. Thus, Ms. Huneycutt performed 130.80 hours of legal services, Mr. Muratides performed 42.20 hours of legal services, Ms. Neugebauer performed 43.80 hours of legal services, and Ms. Derenthal performed 16.20

12

hours of legal services (Doc. 62, p. 5). In sum, the defendants' motion seeks compensation for 233 hours of legal work performed (id.). Defense counsel states that these hours were spent on all facets of the litigation, including drafting of the pleadings and various motions, extensive legal analysis, case management and communication, and post-judgment proceedings (id., pp. 5–6). Additionally, defense counsel has submitted their contemporaneously-recorded billing records, which they aver are "true and correct copies" of the services performed in connection with this matter (see id., pp. 11–24). The defendants have not submitted an expert affidavit supporting the reasonableness of their fees and the requested sum.

As indicated, the plaintiff did not file a response in opposition to the defendants' motion; rather, he filed the affidavit of Mr. Dandar. In his affidavit, Mr. Dandar asserts various claims regarding the reasonableness of the number of hours spent by defense counsel.

Mr. Dandar first asserts that "[o]nly one attorney is reasonable to represent the Defendants in this matter, not four" (Doc. 62, p. 1). This assertion is properly discounted as "[t]here is nothing inherently unreasonable about a client having multiple attorneys, and they all may be

13

compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." Norman v. The Housing Authority of the City of Montgomery, supra, 836 F.2d at 1302. Thus, the fee applicant has the burden to show that the time spent by those attorneys reflects the distinct contribution of each lawyer to the case. American Civil Liberties Union of Georgia v. Barnes, 168 F.3d 423, 437 (11th Cir. 1999). The defendants have met their burden. Defense counsel has provided detailed billing records, which show the work done by each attorney and paralegal (see Doc. 62 pp. 11–24). These records show the distinct contribution of each attorney and paralegal in this matter. Compare Comercio Y Servicios De Transporte Privado PBA S.A. De C.V. v. RDI, LLC, 8:17-CV-1038-TGW, 2020 WL 364784 at *5 (M.D. Fla. Jan. 22, 2020).

Additionally, Mr. Dandar provides what he purports to be a reasonable number of hours spent on various tasks, such as the motion to dismiss, in this matter. He also, cryptically, states a total number of hours that, Ms. Huneycutt only, should have spent on the entirety of the case. Thus, he states (Doc. 62, pp. 1–2):

14

C.     100.700 hours for a Motion to Dismiss in this case is unreasonable; At the most, the reasonable hours should be 4 to 7 hours.

D.     60.50 hours to research and file a Rule 11 motion is outrageous. 1 to 3 hours maximum is reasonable.

E.     Reasonable fee for motion for entitlement to attorney fees and attending a hearing is 3 to 4 hours, not 58.20 hours.

F.     Reasonable time for all communication with opposing counsel on the matters expressed would be no more than 2 hours.

5.     It is therefore my considered opinion based on all factors to consider that a reasonable hours incurred by Alice R. Huneycutt is 10 to 16 hours at $350 to $375 per hour.

Notably, in the defendants' reply, they correctly assert that Mr. Dandar's affidavit does not comply with my previous order (Doc. 63, pp. 2–4). For instance, Mr. Dandar states, in a conclusory manner, that "[a]t the most, the reasonable hours [on a motion to dismiss] should be 4 to 7 hours," which is significantly less than the 100.70 hours requested by defendants (Doc. 62, p. 1). While Mr. Dandar's affidavit provides what he perceives to be a "reasonable time" for the various tasks, he gives no cogent "reasons for the objection," in direct contravention of my order (see Doc. 58, pp. 13–14). Moreover, there is no indication as to whether Mr. Dandar practices in this

area of the law, or even if he currently practices law in Florida (see Doc. 62). Thus, Mr. Dandar's affidavit does not qualify as "an expert affidavit supporting the claimed time or rates" permitted by my order (Doc. 58, p. 14). Even if he were an expert, Mr. Dandar's conclusory and arbitrary statements regarding the reasonableness of the fees is clearly insufficient. Norman v. The Housing Authority of the City of Montgomery, supra, 836 F.2d at 1259 (noting that "[g]eneralized statements that the time spent was . . . unreasonable . . . are not . . . entitled to much weight" and "[a]s the district court must be reasonably precise in excluding hours thought to be unreasonable or unnecessary, so should the objections and proof from fee opponents.").

Further, the defendants correctly assert that, in my order, I stated that "[a]ll time entries, rates, or costs not specifically objected to with a cogent explanation are subject to being granted" (Doc. 58, p. 14). Thus, the defendants aver that their request for attorneys' fees is due to be granted. However, the plaintiff's failure to persuasively argue that the defense counsel's billing records contain excessive time entries does not mean that the defendants' request is automatically granted. See Ottaviano v. Nautilus

16

Ins. Co., 717 F. Supp. 2d 1259, 1268 (M.D. Fla. 2010) (citing Norman v.

The Housing Authority of the City of Montgomery, supra, 836 F.2d at 1259).

Importantly, the defendants' motion is also deficient.

In defense counsel's time records, provided as part of the

defendants' motion, many of the entries are a form of impermissible block

billing. Thus, on multiple occasions, an attorney will list multiple tasks in a

single entry and, moreover, the entry itself is for a noticeably large period of

time. For instance, Ms. Huneycutt made the following submissions, with the

corresponding hours spent on the task noted in bold font (Doc. 62, pp. 12,

13, 15–16):

> 2/21/21: ARH: Review lower court pleadings;
> analyze initial brief, answer brief and reply brief
> for references to res judicata argument; telephone
> conference with N. Neugebauer regarding outline
> of arguments for motion to dismiss; evaluate
> supplemental jurisdiction argument; e-mail
> correspondence to client regarding status of
> federal case; draft procedural history of case for
> motion to dismiss;
> **7.10 hours**
>
> 2/22/21: ARH: Telephone conference with P.
> Powell and C. Carver regarding status of federal
> suit and arguments for motion to dismiss; various
> conferences with N. Neugebauer regarding legal

17

> arguments and research; preparation of motion to
> dismiss; telephone conference with L. Derenthal
> regarding separation of requests for judicial notice
> of lower state and appellate court filing; review
> docket sheet of four pending state court cases;
> preparation of request to judicial notice;
> **7.50 hours**

> 4/19/21: ARH: Continue preparation of motion for
> determination of entitlement to attorneys' fees;
> telephone conferences with J. Muratides regarding
> analysis of dismissal under Rule 41 and status of
> research of federal entitlement to fees;
> **8.30 hours**

Further, due to the block billing, the number of hours spent on

the motion to dismiss on the day it was filed is perplexing. Thus, the motion

to dismiss was filed on February 24, 2021, at 10:21 p.m. (see Doc. 33). On

that date, there are three entries that reflect work performed on the motion to

dismiss; however, those entries add up to a total of 24.4 hours performed on

February 24, 2021, alone (Doc. 59, p. 13):

> 2/24/21: JNM: Review and revise motion to
> dismiss; revise request for judicial notice; evaluate
> cases supporting motion to dismiss;
> **12 hours**

> 2/24/21: LRD: Continue preparing request for
> judicial notice and compiling documents for filing;
> prepare documents for filing as attachments;

18

> continue adding citations to the motion to dismiss;
> **4.00 hours**
>
> 2/24/21: NAN: Revise motion to dismiss and
> prepare exhibits;
> **8.40 hours**

Clearly, it is unlikely that this amount of time was spent on the motion to dismiss in a single day. Notably, the entries include work on both the motion to dismiss and the request for judicial notice. The court could deduce that more time was spent on the motion to dismiss. Thus, the motion to dismiss was a 25-page document involving substantive analysis (see Doc. 33), while the request for judicial notice was merely a 6-page document requesting the district court to take judicial notice of numerous documents filed by the parties in the state court proceeding, which were attached to the filing as exhibits (see Doc. 32). However, because the entries by Mr. Muratides and Ms. Derenthal combine the tasks of work performed on the motion to dismiss and the request for judicial notice into a single entry, it is impossible to decipher what amount of time was put towards each task. American Civil Liberties Union of Georgia v. Barnes, supra, 168 F.3d at 432 (noting that "[t]he imprecision of the billing records submitted by the plaintiff[] makes it

difficult, if not impossible, to calculate with any precision the number of hours an attorney devoted to a particular task in this litigation.").

Moreover, seasoned attorneys like Ms. Huneycutt and Mr. Muratides should not spend excessive hours on tasks such as a motion to dismiss based on the Rooker-Feldman doctrine and a motion for entitlement to attorneys' fees. Scherer v. JPMorgan Chase Bank, N.A., 6:21-CV-119-RBD-GJK, 2022 WL 2785201 at *4 (M.D. Fla. May 23, 2022), report and recommendation adopted, 6:21-CV-119-RBD-GJK, 2022 WL 2785200 (M.D. Fla. June 10, 2022) ("the legal issues [such as] the *Rooker-Feldman* doctrine [] as argued and decided in the Motions to Dismiss are simple and straightforward matters that do not require extensive research nor long years of experience for effective presentation"); Omnipol, A.S. v. Worrell, supra, 2021 WL 1842212 at *5 (noting that the amount of time spent on a fee entitlement matter was excessive).

Importantly, the Supreme Court has cautioned that a "request for attorney's fees should not result in a second major litigation." Hensley v. Eckerhart, 461 U.S. 424, 431 (1983); see also Illoominate Media, Inc. v. CAIR Fla., Inc., 22-10718, 2022 WL 4589357 at *5 (11th Cir. Sept. 30,

20

2022) (citing Hensley v. Eckerhart, supra, 461 U.S. at 431). Thus, "courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." Fox v. Vice, 563 U.S. 826, 838 (2011). "When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008). Although each time entry has been reviewed, in this matter a general across-the-board reduction in the number of hours is appropriate. See Ceres Environmental Services, Inc. v. Colonel McCrary Trucking, LLC, 476 Fed. Appx. 198, 203 (11th Cir. 2012) ("Courts [particularly] have . . . approved across-the-board reductions in block-billed hours to offset the effects of block billing.").

Thus, the defendants have included an excessive number of hours in their attorneys' fees request, while the plaintiff has not provided any reasonable basis for reducing the amount of hours requested. Based on my review, it appears the requested hours are overstated by about 25%. Accordingly, the fees will be calculated as follows:

21

| Claimant | Hours | 25% reduction rate |
|---|---|---|
| Ms. Honeycutt | 130.80 | 130.80 x 0.25 = 32.7<br>130.80 − 32.7 = 98.1 hours<br>98.1 x $375.00 = $36,787.50 |
| Mr. Muratides | 42.20 | 42.20 x 0.25 = 10.55<br>42.20 − 10.55 = 31.65 hours<br>31.65 x $375.00 = $11,868.75 |
| Ms. Neugebauer | 43.80 | 43.80 x 0.25 = 10.95<br>43.80 − 10.95 = 32.85 hours<br>32.85 x $250.00 = $8,212.50 |
| Ms. Derenthal | 16.20 | 16.20 x 0.25 = 4.05<br>16.20 − 4.05 = 12.15 hours<br>12.15 x $100.00 = $1,215.00 |
|  |  | **Total**: $36,787.50 + $11,868.75 + $8,212.50 + $1,215.00 = **$58,083.75** |

It is, therefore, upon consideration,

ORDERED:

That the Defendants' Verified Supplemental Motion on Amount of Attorneys' Fees (Doc. 59) be, and the same is hereby, **GRANTED, only to the extent** that the defendants are awarded $58,083.75 in attorneys' fees.

DONE and ORDERED at Tampa, Florida, this 28th day of December, 2022.

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

23